In the Matter of the Claim of THOMAS HALL, Respondent, against THE SALVATION ARMY and Another, Appellants.*
STATE INDUSTRIAL BOARD, Respondent.

Third Department, July 1, 1932.

*Cadwalader, Wickersham & Taft* [*Francis Smyth* and *J. Delafield Du Bois* of counsel], for the appellants.

*John J. Bennett, Jr.,* Attorney-General [*Joseph A. McLaughlin,* Assistant Attorney-General, and *Hector A. Robichon* of counsel], for the respondents.

HINMAN, J. In this appeal by The Salvation Army and its insurance carrier from an award by the State Industrial Board to claimant, who was found to have been employed as a janitor and cook by said employer, the fundamental question raised is whether it was the intent of the Legislature to extend the Workmen's Compensation Law into the field of employment afforded as a means of charitable aid by such institutions as The Salvation Army.

"Employment," as defined by subdivision 5 of section 2 of the statute, is limited to employment in a "trade, business or occupation carried on by the employer for pecuniary gain, or in connection therewith."

Under that definition, a corporation conducting only a charity and not carrying on a business for pecuniary gain would not be covered. But the statute was amended in 1928. Group 18 of section 3 was amended so as to read: "All other employments, *notwithstanding the definition of employment in subdivision five of section two,* * * * in which there are engaged or employed

---

* Affd., 261 N. Y. 110.

four or more workmen or · operatives regularly,  *  *  *  under any contract of hire, express or implied  *  *  *." (Laws of 1928, chap. 755.) In 1929 this group 18 provision was again amended to provide: "All other employments, *except persons engaged in a clerical, teaching or nonmanual capacity in or for a religious, charitable or educational institution,* notwithstanding the definition of employment in subdivision five of section two  *  *  * except farm laborers, domestic servants, *and persons engaged in voluntary service not under contract of hire.*" (Laws of 1929, chaps. 304, 702.) This was the form of the statute at the time of the accident in question which occurred in October, 1930.

The amendment was upheld in *Brooklyn Children's Aid Society* v. *Industrial Board, Dept. of Labor* (136 Misc. 379; see 256 N. Y. 651). The Salvation Army furnishes compensation insurance and raises no question as to its regular employees but claims that the inmates of its industrial home — who are beneficiaries of charity and are given board, lodging and small sums of money for menial tasks performed by them and necessary in the conduct of the home and also to sustain their self-respect, pending their opportunity to find employment elsewhere — are in a different category. The claim is that their relationship is different from the ordinary contract of employment in that their labor is merely incidental to the charity that is being extended to men who are in need of it. The claimant Hall was an inmate who was out of work and had been ill. He was assigned to light work, which included sweeping, making beds and general porter work in a dormitory and serving meals. He injured himself while cutting bread in the performance of his duties. He was told when he entered the home that he would receive three dollars a week besides his board and lodging. While the amount earned was small and not commensurate with the value of the services, it was intended to make the inmate feel that he was earning something. It was required of him that he do the work assigned to him and take the reward offered to him for his services or he · could not stay. The compensation offered to these inmates is termed a donation and varies from as little as fifty cents to as much as seven dollars a week.

It seems that the statute is broad enough to cover them and that the remedy, if one is to be afforded, must come from the Legislature. Hall was employed in a manual capacity by this charitable institution and was paid. If he had done clerical, teaching or non-manual work, he would have been excepted by the the very terms of group 18 of section 3. Moreover, it does not seem that the Legislature could have intended to include such paid inmate workmen in the class of " persons engaged in voluntary

service not under contract of hire," who are also expressly excepted under another clause of group 18. An employment under the terms offered was accepted by Hall and it was none the less an employment even though the reward for the work required of him was not commensurate with that ordinarily charged for and paid in the ordinary labor market. If the compensation rate allowed by the State Industrial Board is measured by the terms of his actual reward for such services or those of another similarly employed and thus reasonably to represent his earning capacity in that particular employment, no error is committed and no injustice is done. The Board has fixed Hall's average weekly wages at thirteen dollars and fifty cents, which included board and lodging at ten dollars and fifty cents and wages at three dollars. On that basis the compensation rate was fixed at the minimum of eight dollars, as required by the statute (Workmen's Comp. Law, § 15, subd. 6, as amd. by Laws of 1927, chap. 558).

I have ignored the point raised by the Attorney-General as to estoppel of the carrier from pleading that the employer it insures does not carry on business for pecuniary gain. (Workmen's Comp. Law, § 55.) I think the Salvation Army is entitled to an expression of the views of this court on the merits of the point raised. It has carried insurance to avoid the possibility of error in judgment as to the necessity of insuring protection of its inmate laborers of the class to which Hall belongs.

The award should be affirmed, with costs to the State Industrial Board.

All concur; McNamee, J., not voting.

Award affirmed, with costs to the State Industrial Board.