# PETER HANSON v. ST. JAMES HOTEL & UNION CITY MISSION AND ANOTHER.[1]

April 6, 1934.

No. 29,809.

*Charles F. Kelly* and *Gordon J. Mangan,* for relators.
*H. M. Quayle* and *J. F. Boyles,* for respondent.

*LORING, Justice.*

*Certiorari* to review a decision of the industrial commission awarding compensation to the employe.

The Union City Mission of Minneapolis is a charitable institution organized under the laws of Minnesota for the uplift and relief of poor and indigent persons. It is supported by the donations of charitably minded people in and near Minneapolis. To further the needs of the institution the mission operates the St. James Hotel, a farm near Minneapolis, and two cafeterias. Each year the mission incurs a deficit of about $17,000 to $18,000, and this is made up from contributions from the Minneapolis community fund. In

[1]Reported in 254 N. W. 4.

order to keep this deficit at a minimum it is necessary to keep the cost of labor and services necessary to the maintenance of the mission property as low as possible. It is the custom of the institution, when a person applies for aid, to give him a "work test" ticket entitling him to one night's lodging and three meals. If it is found that the applicant is inclined to work he is given odd jobs to do around the mission or the hotel. In some cases where the applicant works six or eight hours a day he is given a slight remuneration, ranging from 50 cents to one dollar for a week's work, with which the recipient may buy tobacco or other incidentals. In some rare instances the amount so paid is three dollars. The money so disbursed is entered on the mission's books as "relief."

Respondent applied for a night's lodging at the mission on the evening of October 30, 1930, and was given a "work test" ticket. The following day he was asked if he was willing to work, and he assented. For the next seven days he worked about six hours a day washing walls, and on November 5, 1930, while so employed, he was injured. He stated that he was to receive one dollar for his week's work, but this was not paid him. This action was brought to enforce payment of compensation under the workmen's compensation act.

The only question presented by this appeal is whether or not there was a contract of hire between the mission and the respondent so as to entitle him to compensation under the provisions of the act. Respondent relies largely upon the case of Hall v. Salvation Army, 236 App. Div. 199, 258 N. Y. S. 269, affirmed 261 N. Y. 110, 184 N. E. 691, 692. In that case the employe came to the Salvation Army Home when ill and, after recovering, was set to work doing odd jobs around the institution. He was a cook by trade and did some cooking. He was told that he would be put on the pay-roll at three dollars per week and given his room and board if he would continue as cook for the institution. He was injured while filling that position. The New York court of appeals, in affirming the decision of the appellate division of the supreme court, awarding compensation to the employe, said [261 N. Y. 112]:

"It is earnestly urged by appellant that the statute should not be held to cover inmates of the 'home' who are taken in as a matter of charity, furnished with board and lodging, and sometimes given clothing and small sums of money, even though such persons are required to perform slight manual services for the purpose of maintaining their health and building up their morale.

"We do not intend this decision to cover such cases. We are merely deciding that the findings of the 'board' in the case at bar are sustained by some evidence."

As a general rule the mission required the men who were inmates of the institution to work, but if they refused to do so they were not "turned out in the cold," although they were not kept on indefinitely. The requirement that a man work while an inmate of the mission was partly to ascertain his adaptability to other employment, which the mission attempted to secure for its inmates, and the small amount of cash given each week to those who worked the longer hours helped keep up the men's morale. The cash was a mere gratuity and could be granted or withheld at the will of the mission. Its payment was but a form of relief.

For the purpose of reducing expenses and making its operations possible, the mission may and in most cases does, as a condition to an inmate's continued residence there, require him to perform occasional services in and about its buildings. A condition of this kind may be imposed upon the inmates without subjecting the mission and the inmate to the provisions of the workmen's compensation act. Such a practice merely furthers the charitable functions of the institution. The room and board furnished the inmates was not a return for the services rendered by them to the mission since they were not required to work at all if they did not so desire.

We are not inclined to follow the English cases cited by respondent but think the views expressed in the New York case, though *obiter*, are correct. We are of the opinion that the commission labored under an erroneous view of the law and that no contract of hiring, within the meaning of our compensation act, existed between Hanson and the mission.

The decision awarding compensation is reversed.