## HOWE LUMBER CO. ET AL *v.* LEON PARNELL

5-4404                                       421 S. W. 2d 621

Opinion delivered December 11, 1967

*Barton, Henry, Thurman, McCaskill & Amsler,* for appellants.

*Leon Parnell,* for appellee.

CARLETON HARRIS, Chief Justice. This is a Workmen's Compensation case. Leon Parnell, appellee herein, was injured on October 4, 1963, while driving a tractor on that date. He was a regular employee of Carey Brothers, this concern being engaged in farming operations. Howe Lumber Company, appellant herein, and hereinafter at times referred to as Howe, operated, *inter alia,* rice farms, and this company had entered into a contract with Carey Brothers whereby the latter

was to combine the rice and haul it to the granary, using Carey Brothers' combines and trucks. Carey was to be paid at the rate of $.18 per bushel of rice delivered to the granary. Under the agreement, Howe furnished a tractor, a rice buggy and a driver to haul the rice from the combine to the truck in order to expedite the unloading of the combine. Earl 'Hampton, an employee of Howe, who had regularly driven the tractor and rice buggy, did not report for work on the above date, and Mr. Walter Carey directed Parnell to drive the tractor and buggy. B. S. Sullivan, farm manager for Howe, offered to give Carey some rice thrashed by an experimental combine that day. Parnell, after being injured, contended that, although regularly employed by Carey Brothers, he was, on October 4, 1963, an employee of Howe, and entitled to Workmen's Compensation Benefits as a result of the accidental injuries arising out of and in the course of the employment. The claim was heard before a referee, who found that Howe did not employ Parnell; that it exercised no control over him nor his activities in any respect, did not pay him, and did not even know that this particular employee was working. The claim was accordingly denied, and the full commission affirmed this finding on appeal, holding that Parnell was acting within the scope of his employment as an employee of Carey Brothers, but not as an employee of Howe Lumber Company. The Circuit Court of Phillips County reversed, finding that Howe agreed that Parnell could drive the tractor, and, though not paying appellee, had planned to give some additional compensation to Carey Brothers, consisting of the rice which was thrashed by the experimental combine. The court held that Parnell was a "special employee," and entered its judgment to that effect. From such judgment, appellant brings this appeal.

Appellee testified that, on the day of the accident, he went to work that morning for Mr. Walt Carey; that he had been driving a bob truck for Carey for about two weeks, hauling rice to the granary. On the day in

question, the Howe employee who normally drove the grain buggy did not show up, and Mr. Carey asked appellee to drive the buggy. Parnell complied, and was injured while so engaged:

"I was coming from unloading coming back and on the way I was coming across the rice field there and a levee had been cut level where I couldn't see it—when I was coming along there I got right at it I looked and I didn't see it—I hit it—I went up and come back down and hit me behind the seat went off the grain buggy."

Parnell received a ureteral stricture, a permanent injury, which will require a dilatation at least once a month.

Parnell testified that he did not have any conversation with anyone connected with Howe Brothers, and did not overhear any conversation between Carey and any Howe employee. He never did receive any pay from Howe, and was still an employee of Carey. He received the same rate of pay (from Carey) that he had been receiving from this employer prior to October 4. He said that Carey's insurance company paid his doctor and hospital bills, and that Mr. Charles Carey continued to pay him $33.00 a week while he was incapacitated, and before he returned to work.

Mr. Walt Carey testified that the Howe driver for the buggy did not show up on October 4, and he (Carey) told Sullivan that he had a boy who could drive the buggy, and he asked Sullivan if that would be all right. Sullivan answered in the affirmative, and said "that he would put some rice from the experimental combines— he said he would put a little rice from them in our trucks for us * * * to kindly compensate for us furnishing the driver of that tractor." Mr. Carey stated that he was the one who told appellee to drive the tractor, and that Parnell, after being dismissed from the hospital, had been employed by either the witness or his brother (Charles Carey).

B. S. Sullivan, farm manager and employee of Howe for 31 years, testified that Mr. Walt Carey directed Parnell to do the driving in question, and that he (Sullivan) had no conversation with Parnell at all, and, in fact, he would not know appellee if he saw him. He paid nothing to Parnell. According to the witness:

"* * * We didn't have a driver and Walt said I have got a boy I could put on it and when he did I told him that was all right with me because it was to their advantage the more rice they got on that truck and got it to Wabash the more money they made and they put this boy—I never did ask him his name or anything and I said well I have got an experimental combine over there cutting there will be a little bit on the hopper there might be 50 bushel and there might be 80 bushel I said when the day is over when they get through— they were running tests when they get through they will dump it on your truck because you are paying that boy to do something for me* * *."

The general principles relative to the question before us are set forth in Larson's Workmen's Compensation Law (1966), Section 48, Page 710:

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

(a) The employee has made a contract of hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work."

Further, in Section 48.10:

"Although the lent-servant doctrine is a familiar one at common law, and has produced some of the most

one at common law, and has produced some of the most venerated and most intricate cases in the law of master and servant, it is necessary to stress once more that the workmen's compensation lent-employee problem is different in one significant respect: there can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer. For vicarious liability purposes, the spotlight was entirely on the two employers—what they agreed, how they divided control, how they shared payment, and whose work, as between themselves, was being done. No one paid much attention to the employee or cared whether he had consented to the transfer of his allegiance, since, after all, his rights were not usually as a practical matter involved in the suit. In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: did he make a contract of hire with the special employer? If this question cannot be answered 'yes,' the investigation is closed, and there is no need to go on into tests of relative control and the like.''

We are here only concerned with whether there was substantial evidence to support the ruling of the commission. It is apparent that ample proof was offered to support the ruling. In the first place, it is undisputed that no contract of hire was entered into between Howe and Parnell. In fact, Parnell himself testified that he never talked with anybody connected with appellant on the day of the accident, and he drove the Howe tractor because of directions from Mr. Walt Carey. There is also evidence that the work done was essentially for the benefit of Carey Brothers since the combines did not have to be moved to a place where the rice could be loaded on the trucks for delivery to the driver; in other words, the combines could be used continuously in the field, which would enable more rice to be combined, and thus would enable Carey Brothers to receive more money. The matter of a benefit or service to the regular employer was commented upon in our case of *Transport*

*Company of Texas* v. *Arkansas Fuel Oil Company*, 210 Ark. 862, 198 S. W. 2d 175, There, the question was whether one Powell was an ''emergency employee'' of the appellant. In reversing the decision of the trial court, which had held that Powell was an emergency employee, this court pointed out that Powell evidently was endeavoring to render a service to his own regular employer when the accident occurred. We said:

''In such cases the general rule seems to be that, where the person rendering assistance to another in an emergency has an interest for his employer in relieving the emergency condition, he does not become an emergency employee of the person to whom he renders such assistance.''

It would also appear, from the testimony of the parties, highly doubtful that Howe would have had the right to control the details of the work (which appellant never attempted to do).

Appellee relies principally upon the fact that the extra grain was given to Carey as a matter of; according to appellant, compensating Carey for furnishing the driver for the Howe tractor and buggy; also, the additional fact that Sullivan knew that Parnell was driving the Howe tractor, and gave his consent for that to be done. There is no point in further discussing these particular facts, since we are not holding that as a matter of law, appellee was precluded from recovery. As stated previously, we are only concerned with whether there was substantial evidence to support the findings of the commission. We think it is evident, from what has been said, that such proof was presented.

Accordingly, the judgment of the Phillips County Circuit Court is reversed, and the cause is remanded, with directions to that court to reinstate the order entered by the commission.