ARKANSAS STATE POLICE v. Edward DAVIS

CA 93-355 870 S.W.2d 408

Court of Appeals of Arkansas
Division II
Opinion delivered February 23, 1994
[Supplemental Opinion on Denial of Rehearing
July 6, 1994.*]

*Mayfield, J., dissents.

*Frank GoBell*, of the Public Employee Claims Division, for appellants.

*Compton, Prewett, Thomas, & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's order affirming and adopting the administrative law judge's opinion. The ALJ found that appellee was entitled to recover temporary total disability benefits from January 20, 1991, the day after he last received his regular salary, through January 12, 1992. On appeal, appellants contend that there is no substantial evidence to support the Commission's decision. Appellee cross-appeals arguing that there is no substantial evidence to support the Commission's finding that he was not a lent employee of the Drug Task Force (DTF) or El Dorado Police Department. We reverse with respect to the issue on direct appeal, and affirm the issue on cross-appeal.

Appellee, Edward Davis, is a police officer with the Arkansas State Police. He was working in the narcotics division prior to the time of his injury. Part of appellant's duties as an Arkansas State Police officer included assisting the DTF in the control of illegal drug activities in the thirteenth judicial district. On July 30, 1990, appellee was placed on suspension with pay and a written notice of suspension was provided to appellee specifically instructing him not to engage in any enforcement action during the suspension period. On or about December 10th through the 13th, 1990, during his suspension period, appellee received information from one of his informants that a drug shipment was arriving in El Dorado. Appellee relayed this information to the DTF. On the day the drug shipment was expected to arrive, appellee contacted the DTF. Appellee was requested by the DTF to go with them to the suspected house. During the service of the warrant, appellee was shot in the chest. Compensation for appellee's ensuing injuries was controverted by the appellants. The Commission awarded benefits.

Appellants contend that appellee was not acting in the course and scope of his employment when he was injured because he was performing enforcement actions which were prohibited under his rules of suspension. Appellants argue that appellee was voluntarily providing assistance to the DTF and El Dorado Police Department outside his duties as an officer of the Arkansas State Police. The Commission found that the actions taken by appellee

advanced the interest of his employer even though the conduct took place during a prohibited time. The Commission thus reasoned that appellee was acting within the course and scope of his employment with the Arkansas State Police when the injury occurred.

 When reviewing the sufficiency of the evidence to support a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the Commission's decision is supported by substantial evidence. *Wright* v. *ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached. *Willmon* v. *Allen Canning Co.*, 38 Ark. App. 105, 828 S.W.2d 868 (1992). These rules insulate the Commission from judicial review and properly so, as it is a specialist in this area and we are not. But a total insulation would obviously render our function in these cases meaningless. *Boyd* v. *General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987).

Section 31.00 of 1A A. Larson, *The Law of Workmen's Compensation* (1993) provides that "[w]hen the misconduct involves a prohibited overstepping of the boundaries defining the ultimate work to be done by the claimant, the prohibited act is outside the course of employment." Likewise, § 31.14(a) provides that:

> It has already been observed that the modern tendency is to bring within the course of employment services outside regular duties performed in good faith to advance the employer's interests, even if this involves doing an unrelated job falling within the province of a coemployee. This, of course, assumes that no prohibition is thereby infringed. But if the unrelated job is positively forbidden, all connection with the course of the claimant's own employment disappears, for he has stepped outside the boundaries defining, not his method of working, but the ultimate work for which he is employed.

■ Larson's discusses the case of *Fowler* v. *Baalmann*, 361 Mo. 204, 234 S.W.2d 11 (1950), which applies the principles above. We find the case of *Fowler* illustrative. In that case, the decedent, James Fowler, a flight instructor for Baalmann, Inc., was forbidden to fly on a particular night of bad weather by his superior and was aware that the flight had been canceled. However, the decedent proceeded with the flight which resulted in his death. In denying benefits the Missouri Supreme Court observed:

> Mere disobedience of an order as to the detail of the work in hand or the mere breach of a rule as to the manner of performing the work are not generally sufficient to deprive an employee of his right to compensation so long as he does not go out of the sphere of his employment. But compensation cannot be allowed when the employee goes outside of the sphere and scope of his employment and is injured in connection with an activity he has been expressly forbidden to undertake.
>
> . . .
>
> An employer has the unqualified right to limit the scope of a servant's employment and activity and to determine what an employee shall or shall not do. The employer likewise has the unqualified right to determine when an employee shall do a certain thing. The prohibition which the employer laid down in this case (the direct order expressly canceling the flight) goes deeper into the relationship of the parties than any mere rule, for it severed utterly and terminated completely the employer-employee relationship for the day.

In this case, the record reveals that appellee was placed on suspension and was specifically prohibited from engaging in enforcement action. However, appellee provided the DTF information related to a drug bust and participated in the execution of the search warrant. Appellee testified that during his suspension he maintained contact with his informants and forwarded that information to the DTF. Appellee also admitted that he wrote out the search warrant used in the drug bust and that he accompanied officers to the house.

Mike Hall, sergeant for the Arkansas State Police, testified that maintaining contact and keeping one's network of informants active, are law enforcement activities. He also stated that he would have reprimanded appellee had he known that appellee was engaged in this type of activity during the suspension period.

The record clearly reflects that appellee was prohibited from performing his duties as an officer because of the suspension. Under these circumstances, appellee was engaged in a prohibited act not only forbidden by his written suspension but unknown to and unaccepted by Mike Hall, his superior. Consequently, appellee was outside the scope and course of his employment when he was injured. Therefore, we do not think fair-minded persons with the same facts before them could have reached the same conclusion as the Commission.

On cross-appeal, appellee contends that there is no substantial evidence to support the Commission's finding that he was not a lent employee of the DTF and the El Dorado Police Department.

In the case of *Howe Lbr. Co.* v. *Parnell*, 243 Ark. 686, 421 S.W.2d 621 (1967), the supreme court stated:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> > (a) The employee has made a contract of hire, express or implied, with the special employer;
> >
> > (b) The work being done is essentially that of the special employer; and
> >
> > (c) The special employer has the right to control the details of the work.

The record reveals that the Arkansas State Police did not lend appellee to the DTF during his suspension nor had any knowledge that appellee was assisting the DTF during his suspension. Sergeant Hall testified that he was unaware that appellee was engaged in the activities he was performing during his suspension. Again, Sergeant Hall stated that he would have reprimanded the appellee if he had known. In fact, the record reveals that

appellee was reprimanded for his participation in the drug raid in violation of his written rules of suspension. Jerry Bradshaw, a lieutenant with the Arkansas State Police, testified that during all times appellee was subject to the control of the State Police.

Appellee argues however that a contract of hire was formed when Officer Robert Gorum requested appellee's assistance on the night of the drug raid because chiefs of police have the authority to draft citizens into service under Ark. Code Ann. § 14-52-202(c) (Supp. 1993).

It is apparent from the record that Officer Gorum was not a chief of police during the time appellee was requested to participate in the execution of the search warrant. It was established during Officer Gorum's testimony that, at the time of the raid, he was not a chief of police, but a close personal friend of appellee. Therefore, appellee's reliance on Ark. Code Ann. § 14-52-202(c) is misplaced.

The record further reveals that the parties stipulated that appellee was an employee of the Arkansas State Police at the time of his injury. The record also reflects that appellee was not receiving a salary from the DTF or the El Dorado Police Department and he only provided assistance to the DTF if he was available to do so. Also, appellee testified that *he* contacted the DTF to provide them with information from his informant. Appellee also testified that he was not under direct control of anyone on the DTF or the El Dorado Police Department.

Based on this evidence, the Commission determined that appellee was not a lent employee. The Commission found that there was not a contract of hire and that appellee was at all relevant times solely the employee of the Arkansas State Police. After reviewing the record, we cannot say there is no substantial evidence to support the Commission's decision.

Reversed on appeal; affirmed on cross-appeal.

PITTMAN and ROBBINS, JJ., agree.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## JULY 6, 1994

879 S.W.2d 473

*Frank Gobel*, for appellant.

*Floyd Thomas* and *Chris Bradley*, for appellee.

PER CURIAM. Petition for rehearing is denied.

MELVIN MAYFIELD, Judge, dissenting. I would grant the appellee's motion for rehearing. This is an appeal from the Workers' Compensation Commission in which this court reversed the Commission's award holding that appellee, an officer with the Arkansas State Police, was entitled to benefits because of an injury received while assisting other law enforcement officers serve a search warrant.

This court reversed the Commission's decision, *see Arkansas State Police* v. *Davis*, 45 Ark. App. 40, 870 S.W.2d 408 (1994), on the basis that appellee, who was on temporary administrative suspension at that time, was outside the scope and course of his employment.

The Commission, however, affirmed and adopted the administrative law judge's decision which held:

> The question to be determined is not whether Davis was engaged in an activity prohibited by his employer at the time of his injury. The question is whether or not the employee's conduct was of a nature that advanced the general interests of his employer even though it may have taken place during a prohibited time period. *See* 1A *Larson Workers' Compensation*, Section 31.24. I find that Davis' actions in maintaining his confidential sources and passing that information on to the proper authorities and, at the request of those authorities, accompanying them for the service of the search warrant, and his attempts to aid his fellow officers when shots were fired did advance the interests of the Arkansas State Police in enforcing drug laws. As was admitted by the Arkansas State Police, but for the suspension with pay, Davis' actions were exactly

those he would have been required to do in carrying out his regular job duties.

The evidence, in my opinion, clearly supports the law judge's decision, and his opinion was adopted by the Commission. The law judge's opinion relies on section 31.24 of Larson's publication on workers' compensation law. This court's opinion takes the view taken by the case of *Fowler* v. *Baalmann*, 361 Mo. 204, 234 S.W.2d 11 (1950), cited by Larson. However, Larson does not indicate that he agrees with the *Fowler* decision, and he states:

> With this case may be compared a Texas case in which an instructor-pilot was killed while giving a student-flyer a lesson a day after his employer had ordered him to return the plane to its homefield. It was held that his death was nevertheless in the course of his employment. The court said:
>
>> If it were a part of Boggs' business as employee to give flying lessons, then the fact that he disobeyed instructions to return the plane at the time he was directed to do so did not remove him from the course of his employment.

1A Larson, *Workmen's Compensation Law*, § 31.24 at 6-34 (1993).

The evidence in this case shows that, although the appellee was on suspension at the time he was injured, his confidential informants continued to give him information, which he passed on to other officers working on the Drug Task Force, and that an informant said it would be necessary for appellant to be at the house to be searched in order for the officers to discover where the drugs were hidden. While at this house, during the time the officers were attempting to execute the search warrant, the appellee was hit by a shot fired through the door by someone in the house.

Under these circumstances, the Commission found that the *act* of helping his fellow officers was not prohibited; it was only the *time* at which the act was done. This was an issue of fact and the Commission's finding is supported by substantial evidence.

I would grant rehearing.

COOPER, J., joins.