Guy DIXON, Deceased *v.* The SALVATION ARMY

CA 03-483                                        160 S.W.3d 723

Court of Appeals of Arkansas
Division III
Opinion delivered April 28, 2004
[Rehearing denied July 28, 2004.]

*Tolley & Brooks, P.A.*, by: *Jay N. Tolley*, for appellant.

*Rieves, Rubens & Mayton*, by: *David C. Jones*, for appellees.

ANDREE LAYTON ROAF, Judge. This is a workers' compensation case. Appellant Guy Dixon suffered an injury while

operating a forklift at the Salvation Army. Dixon was enrolled in the Salvation Army's residential alcoholism program at the time of the injury. Dixon applied for workers' compensation benefits, which were denied. The Commission found that Dixon was not entitled to benefits because he was not under a contract of hire, express or implied, and therefore, was not an employee. For his sole argument on appeal, Dixon argues that the Commission erred in finding that there was no implied contract of employment between him and the Salvation Army. We reverse and remand for an award of benefits.

Dixon sought assistance from the Salvation Army for alcoholism. He enrolled in their sixteen-week residential program and signed a Beneficiary Enrollment Form. Dixon had been in the program a total of four times. The form provided in part that Dixon agreed that the Center owed no obligation to him; that Dixon understood that he was not an employee of the Center; and that Dixon waived his right and the right of his heirs and assignees to bring suit against the Center for any injury sustained while he was enrolled in the program.

As an enrollee, Dixon was required to live on the premises, attend church on Sunday and Wednesday, attend morning devotionals, attend AA meetings, and perform jobs as assigned. The job duties were considered "work therapy," and the Beneficiary Enrollment form characterized the performance of the duties assigned as "volunteer." Dixon was paid $7 per week, with a $1 increase weekly, not to exceed $20. Donald Montgomery, program director, testified that the services were required as a part of work therapy, and the nominal payment was not intended as compensation, but was gratuitous.

As part of his assigned duties, Dixon repaired small appliances and operated a forklift in the Salvation Army's warehouse. Dixon was assigned these tasks because of his prior experience as indicated in his enrollment application. Montgomery testified that the refurbished products were resold and the proceeds used to support the program.

On August 24, 2001, Dixon was injured while operating the forklift. At the time of the accident, Dixon was working a forty-hour work week at the warehouse. He was treated for his injuries, which required the use of a wheelchair for a time. Because the program home was not equipped for individuals in wheelchairs, Dixon was not allowed to return. Montgomery stated:

> We did not allow him to stay at the Salvation Army headquarters during the period of time he was not working for us after the accident. We did not feel there was any work he could do at the warehouse and he was not allowed to continue in the program because he couldn't work while he was on a crutch. As the director of the program, I did not give him the opportunity to give him any work other than driving the forklift after he was hurt.

After Dixon recovered, he returned to the Salvation Army and applied for regular employment on October 4, 2001. On the application, Dixon indicated that the Salvation Army had not previously employed him, nor had he previously applied for employment with them. Dixon began work as a full-time employee on October 8, 2001, after his application was approved. He was given the same forklift-operator job that he had prior to his injury and was paid an hourly salary for forty hours per week. He worked until October 20, 2001. On February 9, 2002, Dixon was found dead. His mother has continued his claim for workers' compensation benefits for the August 2001 injury.

The ALJ denied Dixon benefits, finding that Dixon was not entitled to workers' compensation benefits because he was not under a contract of hire, express or implied, at the time of the injury. The ALJ noted that although he was performing similar work during the two time periods, the relationship between Dixon and the Salvation Army was significantly different. The Commission affirmed and adopted the ALJ's decision, and Dixon appeals.

■■ On review, the appellate court must determine whether the Commission's decision is supported by substantial evidence. Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. The Commission's decision will be affirmed unless a fair-minded person presented with the same facts could not have arrived at the conclusion reached by the Commission. *Second Injury Fund v. Stephens*, 62 Ark. App. 255, 970 S.W.2d 331 (1998). The credibility of witnesses' testimony is within the province of the Commission. *Williams v. Brown's Sheet Metal/CNA Ins. Co.*, 81 Ark. App. 459, 105 S.W.3d 382 (2003).

Arkansas Code Annotated section 11-9-102(9)(A) (Supp. 2003) defines "employee" as:

> Any person, including a minor, *whether lawfully or unlawfully employed in the service of an employer under any contract of hire or*

*apprenticeship, written or oral, expressed or implied,* but excluding one whose employment is casual and not in the course of the trade, business, profession, or occupation of his or her employer and excluding one who is required to perform work for a municipality or county or the state or federal government upon having been convicted of a criminal offense or while incarcerated. (Emphasis added.)

█ Our workers' compensation law further provides that, other than with respect to certain exceptions not relevant to this case, the waiver of workers' compensation benefits by an employee is void. Arkansas Code Annotated section 11-9-108 (Repl. 2002) provides in pertinent part:

No agreement by an employee to waive his or her right to compensation shall be valid, and no contract, regulation, or device whatsoever shall operate to relieve the employer or carrier, in whole or in part, from any liability created by this chapter, except as specifically provided elsewhere in this chapter.

*See also Bryan v. Ford, Bacon & Diver,* 246 Ark. 325, 438 S.W.2d 472 (1969).

On appeal, Dixon argues that the Commission erred in failing to consider that a contract of employment or employment relationship may be implied, and that the work performed by Dixon conferred a benefit on the Salvation Army that was necessary to its operations in processing goods through the stream of commerce. Dixon contends that the benefit conferred upon the Salvation Army provides the underlying basis for the employment as required by Ark. Code Ann. § 11-9-102(9)(a). In response, the Salvation Army argues that Dixon is not entitled to workers' compensation benefits because there was no contract of hire. The Salvation Army points out that (1) Dixon was a beneficiary of its substance-abuse program and volunteered to perform the services; (2) he signed a form indicating that he understood that he was not an employee; and (3) following the incident Dixon applied for actual employment with it, indicating on the application that he was not previously an employee.

The Salvation Army also cites Ark. Code Ann. § 11-9-102(11) (Supp. 2003) and asserts that Dixon's activities would not be considered employment pursuant to the exception provided for "a person performing services for any non-profit, religious, chari-

table, or relief organization."[1] However, this issue was not raised to nor decided by the Commission. The Salvation Army asserts that this section is relevant only to point out that Dixon's argument fails to account for organizations like the Salvation Army that have both volunteers and actual employees, and that persons such as Dixon are only a part of its overall organization and not the only persons responsible for carrying out the objectives of the entity. The Salvation Army contends, as it did to the Commission, that Dixon is merely a beneficiary of its rehabilitation program and not one of its employees.

This is a case of first impression in Arkansas. However, there have been a number of reported cases involving similar claims for workers' compensation benefits brought against the Salvation Army in other jurisdictions.[2] In *McBeth v. Salvation Army*, 314 So. 2d 468 (La. Ct. App. 1975), the claimant, like Dixon, was enrolled in a rehabilitation program for homeless men, most of whom were alcoholics. McBeth was injured in an accident while riding in a

---

[1] We note that this section is found under the definition of "Employment" at Ark. Code Ann. § 11-9-102(11) (Supp. 2003), which establishes that "employment" means an employer with three or more employees regularly employed in the course of business, excepting "any person performing services for any nonprofit religious, charitable, or relief organization." Ark. Code Ann. § 11-9-102(11)(A)(iv) (Supp. 2003). Although this version of Ark. Code Ann. § 11-9-102(11)(A)(vi) (Supp. 2003) has not been interpreted, this court has interpreted the previous version of the statute, which instead excepts "institutions maintained and operated wholly as a public charity." Ark. Code Ann. § 11-9-102(3)(A)(iii) (1987). *See Sloan v. Voluntary Ambulance Serv.*, 37 Ark. App. 138, 826 S.W.2d 296 (1992) (denying workers' compensation benefits to an employee after finding that the employer was being maintained and operated wholly as a public charity); *Marion Hospital Assoc. v. Lanphier*, 15 Ark. App. 14, 688 S.W.2d 322 (1985) (reversing and remanding with directions to dismiss the appellee's workers' compensation claim after finding that the appellant was an institution maintained and operated wholly as a public charity so as to come within the exception found in Ark. Stat. Ann. § 81-1302(c)(1)).

[2] This issue has also been addressed in a number of jurisdictions at the agency level. *Everett v. Salvation Army*, Case No. 1,010,612 (Kansas Div. of Work. Comp., September 2003); *Pearson v. Salvation Army*, Case No. 98-087214 (Mo. Div. of Work. Comp., August 13, 2001); *Pompei v. Salvation Army*, Slip Op., Case No. 9661 4422 (NY Work. Comp. Board, October 24, 2000); *Anderson v. Salvation Army*, Slip Op., Case No. A97-1208 (Pa. Work. Comp. Appeals Board, October 10, 1998); *Bell v. Liberty Mutual Insurance Co.*, Slip Op., Case No. AU/95-114702-01-CC-AU41 (Texas Work. Comp. Commission, April 8, 1996); *Wheeler v. Salvation Army*, Slip Op., Case No. 94-00615R (Okla. Work. Comp. Court, April 8, 1994); *Oaks v. Salvation Army*, Slip Op., Case No. IC 90-713791 (Idaho Industrial Commission, December 15, 1993); *Suchowlec v. Salvation Army*, Slip Op., Case No. SJO 0137652 (Calif. Work. Comp. Appeal Board, October 24, 1991).

Salvation Army truck that was being used to pick up clothes at its receptacles. McBeth brought both a tort claim and a claim for workers' compensation benefits. On appeal of the dismissal of his tort claim, the issue was whether McBeth was an employee of the Salvation Army within the contemplation of the Louisiana workers' compensation law. The court declined to address whether the "beneficiary" form executed by McBeth constituted a waiver of compensation and held that McBeth was not entitled to benefits because he was not "rendering a service for" the Salvation Army within the contemplation of the workers' compensation law. The court stated that the program in which McBeth was a participant was instituted solely for his benefit and for others similarly situated, that the work he performed, as a beneficiary, was a part of the rehabilitation portion of the program and did not accrue to the benefit of the Salvation Army. The court found that there was no contract of hire, express or implied, and that based upon his application for admission, he was fully aware he was a beneficiary, a person being helped by a charitable organization, and "not in any reasonable sense" an employee.

However, two other jurisdictions have reached the opposite conclusion. In *Hall v. Salvation Army*, 261 N.Y. 110, 184 N.E. 691 (1933), the claimant, a charity inmate, was injured while working as a cook in the appellee's industrial house, serving three meals a day, for $13 a day and room and board. The court concluded that Hall was performing work of the same nature as he performed before entering the home, that the work was necessary to the activities of the program, that he was under the direction and control of the appellee, and that he was performing its regular work, for which the organization received a benefit. The court further stated that the decision was not intended to cover inmates "who are taken in as a matter of charity, furnished with food and lodging, and sometimes given small sums of money, even though such persons are required to perform slight manual services for the purpose of maintaining their health and building up their morale." *But see Seymour v. Odd Fellows Home*, 267 N.Y. 354, 196 N.E. 287 (1935) (finding no contract of hire where resident was not required to work).

In *Schneider v. Salvation Army*, 217 Minn. 448, 14 N.W.2d 467 (1944), the claimant was injured while assigned regular work trucking bales of newspaper and operating a freight elevator. The appellee claimed that Schneider was a client or patient in its industrial home, who was given board, lodging and small cash

grants for work done by him as a charity, and to sustain his self-respect. The Minnesota Supreme Court found that there was an employment relationship between the parties, stating:

> The work which respondent did was of a permanent nature and was necessary to the carrying on of the activities of the [project]. He was under the continuous control and direction of relator, doing its regular work at regular hours, from week to week and month to month, for the benefit of the project which it was sponsoring, as well as for himself. Such work required the services of at least some trained, experienced, and permanent employees, who were chosen, where possible, from the list of inmates.
>
> . . .
>
> That relator sought by its rules and regulations to avoid the creation of an employer-employee relationship at the time respondent was admitted to its home in 1928 and readmitted in 1931 and again in 1936 may be conceded. Yet that fact did not prevent the parties from subsequently establishing such relationship by implied agreement, as the statute permits. And it must be kept in mind that 'the mere form put on the transaction by the parties should be disregarded and its real substance made controlling. An employee entitled to compensation cannot contract away that right.'

In so holding, the court distinguished an earlier case, *Hanson v. St. James Hotel*, 191 Minn. 315, 254 N.W. 4 (1934), in which it had found an enrollee in the Union City Mission not an employee. Hanson was injured after he had sought lodging and was put to work for seven days washing walls for the Mission. However, in *Hanson*, the court found it relevant that the work Hanson was assigned was not a return for the services rendered to the Mission and that he was not required to work at all if he did not so desire. The *Hanson* court further stated that the Mission may require an inmate to perform "occasional services" in or about its facility as a condition of continued residence there without being subject to the provisions of the workers' compensation laws.

While some jurisdictions have been hesitant to declare persons in Dixon's situation as employees, there have been exceptions, most notably those found in *Schneider, supra*, to which Dixon's case can be analogized. Like the beneficiary in *Schneider, supra*, there was somewhat of a history between Dixon and the

Salvation Army. In *Schneider*, there was a fourteen-year history, during which the claimant had been enrolled in the men's program on three separate occasions. In this case, it is not clear how long Dixon had worked for the Salvation Army, but the evidence shows that he had been enrolled in the program four times.

■ It is likewise clear that Dixon was providing a benefit to the Salvation Army, as well as receiving a benefit for himself. As in *Schneider*, the work performed by Dixon directly benefitted the Salvation Army. Montgomery testified that the small appliances and items of that nature were refurbished by Dixon and resold, with funds going to support its program. As such, the work Dixon was performing was necessary and integral to the overall operations of the Salvation Army.

■ Additionally, Dixon was supervised and under the direct control of the Salvation Army. He was required to work. In fact, once he was injured, he was ousted from the program. Montgomery testified that because Dixon was in a wheelchair and could not work in the warehouse, he was sent home. Montgomery never offered Dixon any alternative job duties, which could have permitted him to stay in the program. The fact that Dixon was required to work also distinguishes this case from *Seymour, supra,* and *Hanson, supra,* in that the courts found it significant that those claimants were not required to work as part of the program. Moreover, Dixon worked a forty-hour week, as an alleged "beneficiary" of the program. In *Schneider, supra,* the court noted that the claimant worked a regular shift, while in *Seymour, supra,* the court noted that the claimant worked only at his leisure. Moreover, the work Dixon performed required skill and expertise. Dixon was specifically assigned to the duties in the warehouse and was also charged with repairing small appliances because of his prior experience and expertise.

■ Finally, the agreement signed by Dixon does not necessarily waive his status as an employee, particularly, as the *Schneider* court noted, where the conduct of the parties shows an implied contract of hire after the agreement was signed. The mere fact that Dixon signed such an agreement does not defeat the substance of the parties' relationship. Further, even in this time of strict construction, the legislative intent of the workers' compensation laws is still to protect workers. Because of the nature and purpose of these statutory schemes, it is of no small significance

that employees cannot waive their status or protection provided under these statutes. Therefore, we conclude that the form signed by Dixon did not operate to waive his rights under the workers' compensation laws.

■ It is also significant that the statutory provision determining who is an "employee" for the purpose of inclusion within the scope of the protection of our workers' compensation laws includes specific exclusions that cannot be said to apply to Dixon. His duties were clearly not casual and were within the course of the well-known and long-standing commercial trade, business, profession or occupation of the Salvation Army. It is significant that the provision also specifically excludes persons performing work for a governmental entity upon having been convicted of a criminal offense or while incarcerated. Accordingly, we conclude that if non-profit organizations such as the Salvation Army are deserving of some special exemption from the workers' compensation statutes because it is feasible, economical, or otherwise desirable for them to utilize their "beneficiaries" in this way, it is more appropriate to establish such an exemption legislatively rather than for this court to hold that a person such as Dixon is not an employee because he is not "rendering service" to the Salvation Army, but is instead a mere volunteer.

Reversed and remanded for an award of benefits.

NEAL and VAUGHT, JJ., agree.