

Cite as 2014 Ark. App. 536

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-14-110

| | |
|---|---|
| | **Opinion Delivered** October 8, 2014 |
| ESTATE OF FREDERICK BOGAR (DECEASED) | |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G11081] |
| V. | |
| WELSPUN PIPES, INC. | |
| APPELLEE | AFFIRMED |

## JOHN MAUZY PITTMAN, Judge

Appellant appeals from the Arkansas Workers' Compensation Commission's decision that appellant's decedent, Frederick Bogar, was jointly employed by Welspun Pipes, Inc., and Prime Industrial Recruiters (a/k/a Elite Services) at the time of his injury and death, thus entitling Welspun to protection from a tort suit for wrongful death. Also injured in this accident was Mr. Bogar's co-worker, William Durham. Mr. Durham's appeal, involving issues that are essentially identical to those presented herein, was disposed of in a companion case, *Durham v. Prime Industrial Recruiters, Inc.*, 2014 Ark. App. 494, ___ S.W.3d ___.

The dual-employment doctrine was explained in the Arkansas Supreme Court case of *Daniels v. Riley's Health & Fitness Centers*, 310 Ark. 756, 840 S.W.2d 177 (1992), as follows. Citing *Charles v. Lincoln Construction Co.*, 235 Ark. 470, 361 S.W.2d 1 (1962), and 1C Arthur Larson, *The Law of Workmen's Compensation* § 48.00 (1962), the court held that, when a general employer lends an employee to a special employer, the special employer becomes

liable for workers' compensation only if (a) the employee has made a contract for hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work. *Daniels*, *supra*. When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workers' compensation. *Id*. The *Daniels* court also said:

> [T]he solution of almost every such case finally depends upon the answer to the basic, fundamental and bedrock question of whether as to the special employees the relationship of employer and employee existed at the time of the injury. If the facts show such relationship, the existence of a general employer should not change or be allowed to confuse the solution of the problem.

*Id*. at 759–60, 840 S.W.2d at 178 (quoting *Stuyvesant Corp. v. Waterhouse*, 74 So. 2d 554 (Fla. 1954)).

The sole issue presented in this appeal is whether the Commission erred in finding that there was an implied contract for hire between Welspun and appellant's decedent. Appellant argues that the Commission's finding of such an implied contract was erroneous because (1) the Commission employed an erroneous standard in determining whether such an implied contract existed; and (2) the Commission "arbitrarily ignored" evidence favorable to appellant.

Appellant first asserts that the Commission erroneously conflated the elements of dual employment, finding that (a) there was an implied contract for hire with Welspun solely because (b) the work being done was essentially Welspun's and (c) Welspun had the right to control the details of the work. This is an oversimplification of the Commission's findings and is without merit. The existence of an implied contract for hire is a fact question to be

determined based on the totality of the circumstances surrounding the relationship of Welspun and appellant's decedent. *Dixon v. Salvation Army*, 86 Ark. App. 132, 160 S.W.3d 723 (2004) (citing *Schneider v. Salvation Army*, 14 N.W.2d 467 (Minn. 1944) (totality test); *Arkansas State Police v. Davis,* 45 Ark. App. 40, 870 S.W.2d 408 (1994) (fact question)). The Commission's opinion did not merely consider that the work being done at the time of the injury was Welspun's and that Welspun had the right to control the details of the work; instead, it clearly analyzed the issue based on the totality of the circumstances concerning the relationship:

> The undisputed testimony in this case indicates that Elite Services recruits employees for Welspun. However, once the employees go to work at the Welspun facility, Welspun dictates the hours they work, sets their rate of pay, can discipline the individuals and can terminate the individuals. Once Elite Services hires and supplies an employee to Welspun, Elite Services' primary function is to process payroll. Because Elite Services has an exclusive market contract with Welspun in Little Rock, if Welspun fires an Elite Services employee, that employee has nowhere else to go with Elite Services. This examiner can think of no greater indications of an implied employment contract than the ability to determine a worker's weekly hours, his rate of pay, his discipline, and his termination, *combined with* the right to control the work being performed.

(Emphasis added.) Here, the Commission considered not only the right to control the work but also the relationship between the general and special employers; the role of the general employer after supplying an employee to the special employer; the nature of the market contract between the general and special employers; and the effect of that market contract upon an employee's prospects for continued employment with the general employer if terminated by the special employer. In the following paragraph, the Commission recited that another employee injured in the accident, Mr. Durham, testified that:

> [H]e understood that if he was hired by Elite Services that he would be working in the Welspun plant because Elite Services only supplied employees to the Welspun plant.

Mr. Durham also understood that Welspun could fire him. Mr. Durham felt like he was more of an Elite Services employee, but that he was also a Welspun employee.

Noting that the parties had stipulated that the facts testified to by Mr. Durham also applied to the situation involving appellant's decedent, the Commission considered Mr. Durham's testimony together with all of the evidence recited above in finding that an implied contract for hire existed.

We cannot say, on this record, that the Commission employed an erroneous standard by failing to consider the totality of the circumstances concerning the relationship between appellant's decedent and Welspun in finding that there was an implied contract for hire. Nor can we say that evidence of mutual assent or obligations was lacking or that the Commission failed to consider these elements. Assent to the terms of the employment by Welspun is to be found in Mr. Durham's testimony. Mutuality of contract simply means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004). Consideration is any benefit conferred or agreed to be conferred upon a promisor to which he is not lawfully entitled, *or* any prejudice suffered or agreed to be suffered by a promisor other than such as he is lawfully bound to suffer. *McIlroy Bank & Trust Co. v. Comstock*, 13 Ark. App. 13, 678 S.W.2d 782 (1984). Here, mutual obligation is to be found in the evidence, also recited by the Commission, that Welspun reimbursed Elite Services for payments made by Elite to employees for work performed at Welspun: the decedent's obligation to perform work for Welspun was balanced against the obligation of Welspun to provide reimbursements for Elite's payments for that

SLIP OPINION

work.  We hold that the findings underlying the determination of an implied contract for hire are supported by substantial evidence.

Next, appellant argues that the Commission erred by arbitrarily regarding "dispositive evidence" in the form of documents evincing the agreement between Welspun and Elite, and evidence that Elite employees were treated differently than Welspun employees.  We do not agree that this evidence was either arbitrarily disregarded or dispositive.   Although it is true that the Commission may not arbitrarily disregard evidence, the Commission's failure to specifically discuss conflicting evidence does not mean that it was arbitrarily disregarded where there is substantial evidence to support its decision, *Raulston v. Waste Management, Inc.*, 2012 Ark. App. 272, 411 S.W.3d 711, and we have already held that the finding of an implied contract for hire is supported by substantial evidence. Furthermore, even if the Commission had been persuaded by the evidence that appellant mentions to find that Bogar was an Elite employee, this would not preclude a finding that Welspun was a special employer.  *See National Union Fire Insurancev. Tri-State Iron & Metal*, 323 Ark. 258, 914 S.W.2d 301 (1996).

Affirmed.

WALMSLEY and HIXSON, JJ., agree.

*Paul Byrd Law Firm, PLLC*, by: *Paul Byrd*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *James M. Simpson*, *Guy Alton Wade*, and *Phillip M. Brick, Jr.*, for appellee.