SLIP OPINION    Cite as 2015 Ark. App. 135



# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV–14–815

| | |
|---|---|
| | **Opinion Delivered** FEBRUARY 25, 2015 |
| JAMES H. RANDOLPH, JR. | |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION |
| V. | COMMISSION [NO. F909655] |
| STAFFMARK, et al. | |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

In this workers' compensation case, the Commission affirmed and adopted the administrative law judge's decision that concluded that appellant James H. Randolph was both an employee of Staffmark and appellee Americold Logistics. Application of the dual-employment doctrine, thus, protected Americold from tort liability under the exclusive-remedy provisions of the Workers' Compensation Act. In this appeal, Randolph appeals the finding that Americold was also Randolph's employer, arguing that this finding is not supported by substantial evidence. We disagree with him and affirm.

The standard of review is well settled. In workers' compensation appeals, our court reviews the evidence and all inferences in the light most favorable to the Commission's findings and affirms if the decision is supported by substantial evidence. *Durham v. Prime Industrial Recruiters, Inc.*, 2014 Ark. App. 494, 442 S.W.3d 881. Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation

or conjecture. *Id*. Although we give deference to the Commission on issues of weight of evidence and credibility of witnesses, the Commission may not arbitrarily disregard testimony and is not so insulated as to render appellate review meaningless. *Id*. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the Commission's conclusions. *Id*.

What is at issue before us is the application of the dual-employment doctrine. This doctrine was explained by our supreme court in *Daniels v. Riley's Health & Fitness Centers*, 310 Ark. 756, 840 S.W.2d 177 (1992), where it held that when a general employer lends an employee to the special employer, the special employer becomes liable for workers' compensation only if three factors are satisfied:

> (1) the employee has made a contract for hire, express or implied, with the special employer;
> (2) the work being done is essentially that of the special employer; and
> (3) the special employer has the right to control the details of the work.

The solution of almost every such case depends on the answer to the basic, fundamental, and bedrock question of whether, as to the special employee, the relationship of employer and employee existed at the time of the injury. *Id*. If the facts show such a relationship, then the existence of a general employer should not change or be allowed to confuse the solution of the problem. *Id*. Because both employers may each have some control, there is nothing logically inconsistent, when using this test, in finding that a given worker is the servant of one employer for certain acts and the servant of another for other acts. *Id*. The crucial question is which employer had the right to control the particular act giving rise to the injury. *Id*.

There was evidence and analysis on all three factors below, and the parties agreed that there was not an express contract between Randolph and Americold. The sole substantive issue on appeal is whether the Commission erred in finding that there was an implied contract of employment between Randolph and Americold. The existence of an implied contract for hire is a fact question to be determined based on the totality of the circumstances surrounding the relationship of appellant and appellee. *Dixon v. Salvation Army*, 86 Ark. App. 132, 160 S.W.3d 723 (2004).

For clarity, we can begin with a basic overview of what facts are not in dispute. Randolph was an employee of Staffmark, a temporary employment service agency. Randolph was assigned to work for Americold in its frozen-foods warehouse, and on October 26, 2009, Randolph suffered significant and permanent injuries in an accidental workplace injury. Randolph was working the night shift as an hourly-paid forklift driver in Americold's warehouse. Randolph sustained a thoracic spinal-cord injury resulting in spastic paraplegia, as well as a brain injury resulting in some hearing loss. Staffmark accepted this as a compensable workers' compensation claim and paid appropriate benefits.

Randolph filed a negligence lawsuit against Americold in Pope County Circuit Court. Randolph listed Americold as his most recent employer in answers to interrogatories with regard to that lawsuit. Americold sought to dismiss that lawsuit on the basis of the exclusive remedy being in workers' compensation. The trial court stayed any action on the negligence claim until the Workers' Compensation Commission made a determination whether Randolph had an employee-employer relationship with Americold at the time of injury

SLIP OPINION

SLIP OPINION

under the dual–employment doctrine. There were two witnesses at the hearing before the administrative law judge: appellant Randolph and appellee Americold's general manager Rick Peterson. Their testimony revealed the following.

Randolph testified that he had a limited education, only through eighth grade, but he had experience driving a forklift. A resident of Russellville, he explained that the only way to get a job in that town was to go through a temporary service. He informed Staffmark that he had many years of experience driving a forklift and was looking for that kind of work. Staffmark personnel told Randolph of a forklift job available at Americold, so he was assigned to go to their warehouse for work. In his first week on the job, on the night shift, he was moving a pallet and was seriously injured. As he understood it, he would not be considered an employee of Americold until he logged 240 hours on the job, which he had not yet done when he was hurt. He said that for work performed, he would receive checks through Staffmark, although he did not remember ever receiving a check for his time at Americold. Randolph believed that he was hired by Staffmark and "placed with" Americold for hourly wages. Americold was to tally his clocked-in hours, send his pay to Staffmark, and then Staffmark was the entity that actually paid him.

Randolph agreed that someone at Americold trained him in what he was supposed to do, provided him a jacket and pants, told him what hours to work, and told him how to do his job. He explained the job as using the forklift to move frozen product in accordance with a computer printout to fill orders for companies such as Tyson and ConAgra, readying it for shipment on trucks.

Peterson, the general manager for Americold, testified that he signed an agreement with Staffmark for staffing services, which was in place in October 2009. The terms of the agreement were such that if Americold needed a lift driver, checker, dock worker, or anyone to help with the freezer, Americold would call Staffmark to fill the particular jobs needed. Americold would be billed on a weekly basis for the hours worked at the agreed-upon markup, Americold would pay that to Staffmark, and Staffmark would remit appropriate wages to the workers accordingly. Peterson stated that Americold supervised the work of the employees and that Staffmark never sent personnel to their facility to supervise the workers. Peterson said that once Staffmark sent a person to Americold, "they were our associates" to be directed, disciplined, or terminated by Americold. He acknowledged that an employee would not be eligible for health insurance and retirement benefits until they were hired on full time by Americold after an initial period of employment.

Peterson explained Staffmark's role after sending a worker was "just to hand them a paycheck." He stated that the agreement between Staffmark and Americold noted that Americold was a customer of Staffmark, and no where did it state that the workers that Staffmark sent to Americold would be Americold's employees. He insisted that Randolph would be treated just like regular employees because Americold was looking for full-time workers when it called Staffmark.

No document placed in evidence showed an express contract of employment between Randolph and Americold. This situation turned on whether there was an implied contract of employment between Randolph and Americold.

5

The ALJ found that on the basis of the record as a whole, and after reviewing the evidence in this case impartially, without giving the benefit of the doubt to either party, Americold was a special employer to Randolph, who was Americold's temporary employee. The ALJ recited the uncontradicted evidence of the work being done at the time of injury was that of Americold and that Americold had the right to control every aspect of the work and paid the hourly wage. Randolph contends that this is not supported by substantial evidence because Randolph testified at the hearing that he did not believe that he was Americold's employee. Randolph adds that Americold disavowed the existence of such an implied employment contract until it was sued in tort.

To the contrary, both Randolph and Americold operated on the belief that Randolph would garner full-time employee benefits after he logged sufficient hours. That the implied employment contract was instituted through a temporary employment agency does not negate the fact of his dual employments. *Compare Daniels v. Riley's Health & Fitness Centers*, *supra* (finding of dual employment by virtue of implied contract supported by substantial evidence; Daniels was under implied employment contract with athletic club where he was sent to work by his other employer, a temporary agency; contract language between agency and club not controlling); *Estate of Frederick Bogar v. Welspun Pipes, Inc.*, 2014 Ark. App. 536, 444 S.W.3d 405 (finding of dual employment by virtue of implied contract supported by substantial evidence; Bogar was sent by an industrial recruiter to Welspun's facility to work under Welspun's exclusive direction); *Durham*, *supra* (finding of dual employment supported by substantial evidence; Durham was employed both by a temporary employment agency and

the operator of a manufacturing plant where he was hurt; contract between temp agency and industrial plant did not preclude finding of dual employment and not arbitrarily disregarded).

An implied contract is proven by showing the parties intended to contract by circumstances showing the general course of dealing between the parties. *K.C. Props. of N.W. Ark., Inc. v. Lowell Inv., LLC*, 373 Ark. 14, 280 S.W.3d 1 (2008). Staffing or employment agencies are a part of today's market reality, and there can be no question but that Randolph provided employee services to Americold and that Americold treated Randolph as any other employee and paid an hourly rate for those services. Our appellate courts have repeatedly upheld a finding of dual employment and the exclusivity of the workers' compensation remedy in this context. *See Nat'l Union Fire Ins. v. Tri-State Iron & Metal*, 323 Ark. 258, 914 S.W.2d 301 (1996) (claimant, hurt on job site while driving forklift, was employee of both temporary contract help provider and of the industrial employer for purposes of exclusivity doctrine of workers' compensation law); *Daniels*, *supra*; *Welspun*, *supra*. *See also Beaver v. Jacuzzi Brothers, Inc.*, 454 F.2d 284 (8th Cir. 1972) (holding that under Arkansas law, injured worker who was sent to Jacuzzi on assignment by Kelly Girl, a temporary worker supplier, was bound by exclusivity provision of workers' compensation law and not permitted to file a negligence suit against Jacuzzi). This case turned on the interpretation of the testimony and matters of weight to be given the evidence, and while there was evidence to support a contrary finding, we cannot say that there lacks substantial evidence of record to support the finding that Randolph was an employee of Americold for

SLIP OPINION



purposes of the exclusive-remedy provision of Arkansas Code Annotated section 11–9–105 (Repl. 2012).

Affirmed.

ABRAMSON and HOOFMAN, JJ., agree.

*Gary Davis*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr.*, and *Baxter D. Drennon*, for appellees.