OLIVER *v.* CULPEPPER.

4-7746                                   190 S. W. 2d 457

Opinion delivered November 19, 1945.

Rehearing denied December 10, 1945.

*Barney & Quinn,* for appellant.

*Bert B. Larey* and *Arnold & Arnold,* for appellee.

SMITH, J. Mrs. Mary E. T. Culpepper, a resident of Cass county, Texas, died testate in 1907. She owned at the time of her death 100 acres of land in Cass county, Texas, and a small amount of personal property. Her will reads as follows:

"I, Mrs. Mary E. T. Culpepper of Cass county, Texas, being of sound mind and being desirous to settle my worldly affairs while I have strength to do so, do make this my last will and testament hereby revoking all others heretofore by me made.

"Item 1: I desire and direct that my body be buried in a Christian-like manner suitable to my circumstances and conditions in life.

"Item 2: I desire and direct that all my just debts be paid by my executor to be hereinafter named.

"Item 3: I give, bequeath and demise to my afflicted daughter, Nancy T. A. Culpepper, all of my property, both real and personal of all character and kinds regardless of where situated, to have and use for, and during her natural life, and at her death whatever remains, if any, of said property, I give, bequeath and demise to my son, W. E. Culpepper, and my daughter, Mary Beulah Culpepper, share and share alike.

"Item 4: I hereby appoint my son, W. E. Culpepper, guardian and trustee of the person and estate of the said Nancy T. A. Culpepper.

"Item 5: My executor hereinafter appointed shall have full control and management of all said property herein granting to him full power to sell and make title to any and all of said property and to invest same or any part thereof in other property as to him may seem to the best interest of the legatee herein.

"Item 6: I hereby constitute and appoint my son, W. E. Culpepper, sole executor of this my last will and testament without bond for the due and legal performance of the same and will and direct that the Court have nothing further to do with my said estate, other than the probate of this my last will and testament, and the return of an inventory and appraisement of same.

"In testimony whereof I hereunto set my hand this 6th day of June A. D. 1906."

Art. 3436, Vernon's Ann. Texas Statutes reads as follows: "Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate." (Acts 1876, p. 124; G. L. Vol. 8, p. 960.)

Under such a will the person named as executor is known in that state as Independent Executor, and it was held in the case of *Gaines* v. *First State Bank,* 28 S. W. 2d

wife, since that time, have had the care and expense of Nancy T. A. Culpepper, and it is not denied that this burdensome duty was discharged as completely as the circumstances of W. E. Culpepper and his wife permitted.

Beulah Oliver, nee Culpepper, one of the remaindermen under the will of her mother, lived on the land until her marriage, when she moved away, and has not since had any of the care and responsibility for her afflicted sister, and appears to have made no contribution to her support, except that on one occasion she gave her some candy and fruit, and another occasion gave her a pair of garters, and for some years before the institution of this suit had not visited her.

By mesne conveyances, of which there are a large number, Mrs. Stella Pattillo acquired the Bivins title to the southwest quarter, southwest quarter of section 17 and the south half, northwest quarter, southwest quarter of section 17, and D. W. Pattillo acquired the Bivins title to the north half, northwest quarter, southwest quarter of section 17.

The remaining 120 acres were conveyed by W. E. Culpepper, in his own right, and as trustee, to his wife, Mrs. Ethel Culpepper. This deed recites the provisions of the will of the grantor's mother, and purports to convey pursuant to the power to sell there conferred. This deed is dated December 17, 1918, and recites that it "is made to compensate his wife, Ethel Culpepper, for taking care of my said invalid sister who owns a life estate in the above described property." The testimony shows that this deed was executed in contemplation of W. E. Culpepper being called as a soldier in World War I, then raging, but he was not called to service. The undisputed testimony shows that for many years Mrs. Culpepper faithfully performed the service of caring for Nancy T. A. Culpepper, the contemplation and assumption of which service formed the consideration of the deed to her.

On October 17, 1942, W. E. Culpepper and wife executed an oil and gas lease covering the southeast quarter, northeast quarter of section 17 to J. K. Wadley, which was assigned by Wadley (Feb. 15, 1943) to Barnsdall Oil

Co., and the Standard Oil Co., which last named company assigned its interest to Sohio Pet. Co.

On November 17, 1942, W. E. Culpepper and wife executed an oil and gas lease covering the northwest quarter, southeast quarter of section 17 to J. K. Wadley, who assigned the lease to Barnsdall Oil Co. and Standard Oil Co., and the Standard Oil Co. assigned its interest to Sohio Pet. Co.

On February 13, 1945, Mrs. Ethel Culpepper, as guardian of Nancy T. A. Culpepper, executed an oil and gas lease to J. K. Wadley covering the southwest quarter, northwest quarter of section 16; west half, southwest quarter of section 17; northwest quarter, southeast quarter of section 17; southeast quarter, northeast quarter of section 17. This lease covers the entire 200 acres and includes, of course, the two forty-acre tracts on which W. E. Culpepper and wife had executed the leases above mentioned to J. K. Wadley. Further reference will be made to this lease, as it has an important bearing on the question of the title to this land.

On December 1, 1944, Mrs. Ethel Culpepper and her four daughters, each in her own right, executed a royalty deed to J. K. Wadley, covering the northwest quarter, southeast quarter of section 17.

W. E. Culpepper died intestate March 31, 1944, and was survived by his widow and their four daughters who, with their mother, executed the royalty deed just referred to, to J. K. Wadley.

Oil prospects gave these lands a value they would never otherwise have had, and on February 14, 1945, Mrs. Ethel Culpepper, the widow of W. E. Culpepper, filed a bill in her name individually, and as guardian of Nancy T. A. Culpepper, an incompetent, to quiet the title to the lands hereinabove described against Beulah Oliver. Stella and D. W. Pattillo were named as plaintiffs, but they filed separate pleadings in which they prayed that their title be quieted.

This bill alleges, and the testimony clearly shows, that an error was made in the description of the lands

297, that an executor with power to administer without control of the probate court is a trustee for those entitled to take under the will. W. E. Culpepper was therefore a trustee under this statute as thus construed. W. E. Culpepper derived his power from the Texas will and it appears to be the law of that state that an independent executor may do without an order of court anything which the court could order him to do. *Beckham* v. *Beckham*, 202 S. W. 517. In addition paragraph four of the will expressly appoints him "guardian and trustee of the person and estate of the said Nancy T. A. Culpepper," and the next paragraph of the will provides that the executor, who is also trustee, "shall have full control and management of all said property herein granting to him full power to sell and make title to any and all of said property and to invest same or any part thereof in other property as to him may seem to the best interest of the legatee herein."

These are as great powers as could well be granted and clearly contemplate that the son, W. E. Culpepper, might consume the entire estate in the support of his sister, as the devise to the remainderman is of "whatever remains, if any, of said property."

This will was dated June 6, 1906, and was admitted to probate in Texas in October, 1907. The daughter, Nancy T. A. Culpepper, is now 63 years old, is blind, mentally incompetent, an invalid, and wholly unable to take care of herself.

In December, 1908, W. E. Culpepper, under the power conferred in his mother's will, sold her 100-acre tract of land in Texas, for the sum of $1,000, and thereafter removed, with all the members of his mother's family, to Miller county, Arkansas, where he bargained to buy and bought a 200-acre tract of land, for the consideration of $2,000, from W. E. Pattillo. He had only the $1,000 in cash received from the sale of his mother's land, and he gave notes, secured by vendor's lien, for the balance of $1,000. These notes were sold by Pattillo to R. S. Allday & Son.

The deed from Pattillo to W. E. Culpepper described the land as follows: Southeast quarter, northeast quarter of section 16; west half, southwest quarter of section 17; northwest quarter, southeast quarter of section 17; southeast quarter, northeast quarter of section 17, all in township 18 south, range 28 west.

On the same day on which he received this deed from Pattillo, W. E. Culpepper, as guardian and trustee for his sister, Nancy T. A. Culpepper, conveyed to himself, his brother, J. M., and A. B. Cornett, the husband of another sister, for the recited consideration of $1,000, the east half, southwest quarter, northwest quarter of section 16 and west half, southwest quarter of section 17, township 18 south, range 28 west. This description covers 100 acres, or one-half of the 200-acre tract.

The evident purpose of this deed was that the three grantees named should pay the balance of the purchase money, and they executed separate notes totaling $1,000, to the order of W. E. Culpepper, guardian and trustee. It was contemplated that these notes would be paid with money earned by farming the land, but the crops were poor and no payments were made on the notes, and at a later date J. M. Culpepper and A. B. Cornett, joined by their wives, reconveyed this 100 acres to W. E. Culpepper individually. This deed was dated October 14, 1909.

This left W. E. Culpepper as guardian and trustee owing the $1,000 unpaid purchase money, to pay which he executed a deed December 14, 1910, to A. Frank Bivins for the west half, southwest quarter of section 17, township 18 south, range 28 west, for the sum of $250, which he paid to Allday & Son, the holders of the vendor's lien notes, and he paid the balance of the $1,000 in 1917 and 1918. It is said that this balance was paid with the proceeds derived from the cultivation of the land, and so it may have been, in part at least, but it is obvious and clearly shown that these proceeds would have paid only a very small part of the expense and the value of the services rendered by W. E. Culpepper and his wife to Nancy T. A. Culpepper. It is shown, and undisputed, that W. E. Culpepper, until the time of his death, together with his

conveyed by W. E. Culpepper to his wife, and reformation to correct this error was prayed. It was prayed also that it be decreed that Beulah Oliver no longer owned an interest in the land; that a receiver be appointed pursuant to the provisions of § 10554, Pope's Digest, to execute oil and gas leases, and for all other and further relief to which plaintiffs may be entitled.

Numerous pleadings were filed, including an answer by Beulah Oliver, in which she alleged she was owner in fee of an undivided one-half interest in the lands herein described, subject to the life estate of Nancy T. A. Culpepper. She also filed a cross-complaint in which she prayed the cancellation of the various deeds and leases hereinbefore referred to, and she prayed also that her title be quieted against all such conveyances.

After the Pattillos had made themselves parties defendant, they alleged title in themselves through the conveyances in their chain of title herein set out. They also claimed title to the 80 acres in which they are interested through actual adverse possession over a period of much longer than seven years.

An amendment to the original bill was filed against Beulah Oliver, in which all the persons interested as herein shown, joined as plaintiffs and prayed that their respective titles and interests be quieted against any claim of Beulah Oliver.

In general terms the decree granted all the relief prayed, including the reformation of the description of the lands mentioned in the deed from W. E. Culpepper to his wife, and from that decree Mrs. Oliver has appealed.

So much of the decree as quieted the Pattillo title is affirmed. The deed from W. E. Culpepper and wife to Bivins, through whom the Pattillo title is derived, was executed December 14, 1910. This is a warranty deed with covenants of warranty, and purports to convey any and all title owned by W. E. Culpepper. The consideration for this deed was $250 cash, and its purpose was to obtain money to be applied to the partial payment of the balance

due on the purchase price of the 200-acre tract by W. E. Culpepper. It was shown that this $250 was applied to the payment of the past-due note, held by Allday & Son, and was required to save the property from the foreclosure of the vendor's lien. It was the duty primarily of W. E. Culpepper to support his incompetent sister, and for that purpose he was given full power to· sell all, or any part of the trust property. *Heiseman* v. *Lowenstein,* 113 Ark. 404, 169 S. W. 224, Ann. Cas. 1916C, 601. See, also, *Thurman* v. *Symonds,* 126 Ark. 216, 190 S. W. 106. It is true W. E. Culpepper did not convey to Bivins in his representative capacity, but he did attempt to convey the entire title and he warranted the title conveyed.

The case of *Lanigan* v. *Sweaney,* 53 Ark. 185 ,13 S. W. 740, discussed the effect of a conveyance by a trustee which makes no reference to the power to sell conferred by the instrument which created the trust. After stating that the rule as first announced in England was that if such a conveyance would have no effect at all without reference to the power, it would be referred to the power, but if it would have some effect, though not all expressed on its face, it should be referred to the grantor's interest. But the opinion proceeds to say: "But the rule is much more liberal under subsequent adjudications, and it is now generally if not universally held, that if such a conveyance would have some effect if referred to an interest, but would not have full effect without reference to a power, it should have effect by virtue of the power. This seems reasonable and right, for the grantor is understood in equity to engage with his grantee to make his conveyance as effectual as he has power to make it, and it should be assumed that he acted by virtue of whatsoever right enabled him to discharge his full undertaking, and his act will be so referred." See, also, *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373, and the numerous cases cited in the annotator's note to the case of *Reeside* v. *Annex Bldg. Assn.,* 165 Md. 200, 167 Atl. 72, 91 A. L. R. 426.

Moreover, the title to the Bivins land has been settled by the long, continued adverse possession of the Pattillos, who succeeded to this title. It is apparently

conceded, and we think it true, that the acquisition of the Miller county land, the 200-acre tract, with the proceeds in part at least, of the sale of the Texas property, imposed the same trust relation upon the Miller county property. But even so, the adverse, continuous and open holding of the 80-acre tract for 25 years, or more ,by the Pattillos, and the testimony shows that the entire 80-acre tract was enclosed by a fence, would have, and did bar the trustee's title, and if so it barred the title of the *cestui que* trust.

Such is the holding in the case of *Chase* v. *Cartwright*, 53 Ark. 358, 14 S. W. 90, 22 Am. St. Rep. 207, where it was said: "Seven years adverse possession was sufficient to bar the right of the trustees, they being under no disability; but whenever the right of action in the trustees is barred by limitation, the right of *cestui que trust* represented is also barred. (Citing cases and authorities.)" See, also, *McGaughey* v. *Brown*, 46 Ark. 25; *Bland* v. *Fleeman*, 58 Ark. 84, 23 S. W. 4, and *Little* v. *McGuire*, 113 Ark. 497, 168 S. W. 1084.

It will be remembered that Mrs. Oliver did not institute this suit, and she says that she is now required to assert her title, failing which it would be canceled, but that she was not previously required to do so, as her interest was that of a remainderman, and her sister is still alive, and she therefore had no title which she could have asserted. This is her answer to the contention of the appellees that she has lost her interest.

Appellees urge that as Mrs. Culpepper's will gave her son, as executor, full power to convey, his deed to his wife conveyed the title. We do not think so. The recent case of *Dowell* v. *Land*, 208 Ark. 908, 188 S. W. 2d 134, cites numerous cases to the effect that a trustee cannot sell property to himself, or to his wife, and we therefore hold that Mrs. Culpepper did not acquire title by the deed from her husband, and as will presently appear, we do not think it was understood that it had done so.

As has been said, W. E. Culpepper executed two leases and we think the will of his mother gave him this power. His widow, in conjunction with her daughters,

the heirs of W. E. Culpepper, executed another lease which is invalid, except only as to the interest of Mrs. Culpepper acquired under the deed to her from her husband. But the proceeds of this and all other leases (except the Bivins land) must be treated as made for the benefit of Nancy T. A. Culpepper.

It is argued that W. E. Culpepper acquired title to a one-half interest in the 200-acre tract, as a resulting trust, arising out of the fact that he paid one-half of the purchase money. But not so. The record in its entirety shows that he bought the 200 acres for the use and benefit of his sister, Nancy T. A. Culpepper, pursuant to the discretion and powers contained in his mother's will. It is insisted also that Mrs. W. E. Culpepper has acquired title to the land conveyed to her by her husband, by adverse possession, but this contention cannot be sustained.

There is a probate order made and entered February 13, 1945, which refutes both of these contentions. On that day the court, on the petition of Mrs. Culpepper, filed as guardian of the person and estate of Nancy T. A. Culpepper, approved the lease she had given J. K. Wadley. This order recites that on February 13, 1945, Mrs. Culpepper had been duly appointed by that court as guardian of Nancy T. A. Culpepper, who "still owns and claims all the right, title and interest in the lands above described, which she acquired under and by virtue of deed from D. W. Pattillo and wife to W. E. Culpepper, as guardian and trustee of Nancy T. A. Culpepper." This order admitted the will of Mary E. T. Culpepper to probate in this state, it having been regularly probated by proper court order in Texas on November 4, 1907.

The court had the power to make this order, and its effect is to confirm the Wadley lease, but it has the effect also of refuting any contention that W. E. Culpepper had title to a one-half interest in the 200-acre tract, as a resulting trust, and it would refute also any contention that Mrs. W. E. Culpepper acquired title of any kind by adverse possession.

Mrs. Culpepper will, at an appropriate time, account for, and charge herself with the proceeds of these leases,

against which she will be entitled to take credit for the expenses of Nancy T. A. Culpepper's support and for the value of her services in that connection.

So much of the decree as quiets the title to the Bivins 80 acres will be affirmed, but the decree quieting title to the remainder against Beulah Oliver will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.

It is finally insisted that although it be held that Beulah Oliver has an interest in the land, which she has not lost through the proceedings hereinbefore recited, partition of the oil and gas leasehold estates should be ordered. It is within the discretion of the court to grant that relief. Section 10549, Pope's Digest; *Overton* v. *Porterfield,* 206 Ark. 784, 177 S. W. 2d 735, and the fact that there is a life tenant is not of itself sufficient reason for denying that relief. *Rockamore* v. *Pembroke,* 208 Ark. 995, 188 S. W. 2d 616; but whether this is done or not, all proceeds of any leases (except the Bivins land) must be paid to Mrs. W. E. Culpepper, as the guardian of Nancy T. A. Culpepper, for the support of her ward, and be accounted for as guardian until the estate of the remaindermen shall vest upon the death of Nancy T. A. Culpepper. This will include all proceeds derived from the land not owned by the Pattillos.