


# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–16–552

| | |
|---|---|
| PREFERRED MEDICAL ASSOCIATES, LLC; ADAM WOZNIAK, M.D.; AND DIANNA OWEN<br><br>APPELLANTS<br><br>V.<br><br><br>THE ABRAHAM FAMILY TRUST, SIMON ABRAHAM, M.D., AND ANNIE ABRAHAM, TRUSTEES<br>APPELLEES | **Opinion Delivered** April 26, 2017<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03CV-10-282]<br><br><br>HONORABLE GORDON WEBB, JUDGE<br><br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Preferred Medical Associates, LLC ("PMA"), Dr. Adam Wozniak, and Dianna Owen appeal from a judgment holding them liable for breach of a commercial lease. We affirm.

### I. *Background*

PMA is a limited–liability medical practice of which Dr. Adam Wozniak is a member and Dianna Owen is an employee. In February 2010, PMA was in the market for leasing office space. Dr. Simon Abraham practiced medicine in Mountain Home, Arkansas, under the name Abraham Medical Center. PMA negotiated a lease for office space in the same facility that housed Dr. Abraham's practice, and the lease contemplated that the two doctors would coexist and share certain medical equipment. PMA agreed to pay a $20,000 deposit

and rent of $10,000 per month for a term of eighteen months. The lease was signed by Dr. Abraham and his wife, Annie Abraham, as lessors; by Dr. Wozniak individually and on behalf of PMA; and by Ms. Owen individually.[1]

Five and a half months into the lease, appellants vacated the leased premises. As a result, the Abrahams sued appellants for breach of the lease and sought $125,000 in rent due under the remaining twelve and a half months of the lease term, plus incidental damages. Appellants responded that their decision to vacate was justified because Dr. Abraham's conduct toward them amounted to a constructive eviction from the premises.

A bench trial began in January 2013, but the proceedings were halted when appellants discovered that the Abrahams did not own the leased premises. The Abrahams had previously created a revocable trust, the Abraham Family Trust ("the Trust"), and had funded the Trust with the leased premises. As a result, the Trust owned the facility where the leased premises was located. The Abrahams took the position that this information was not detrimental because they were the sole trustees of the Trust with full authority to execute a lease of Trust property. Appellants argued that, in light of this new information, the Abrahams lacked standing to enforce the lease because they filed suit as individuals rather than as trustees. Appellants also argued that the lease contract was invalid because the Abrahams failed to identify themselves as trustees thereon. The trial court asked for briefs on the issue and, after considering the parties' arguments, ruled that the lease was valid and enforceable.

---

[1]The lease was also signed by another PMA employee, Carmen Kruse. Ms. Kruse is not a party to this appeal.

SLIP OPINION

The trial resumed, and appellants presented evidence on their claim of constructive eviction. Dr. Wozniak and Ms. Owen testified that Dr. Abraham made such unreasonable demands and placed such unreasonable restrictions on them during their occupancy that he deprived them of the use and benefit of the leasehold. By contrast, Dr. Abraham testified that the lease arrangement was working fine, with only minor adjustments being required. After hearing the evidence, the court found that Dr. Abraham's conduct did not rise to the level of constructive eviction, despite the "numerous relatively petty conflicts" that developed between the parties during their five and a half months of shared occupancy. The court therefore ruled that appellants breached the lease without justification and owed the remaining twelve and a half months of rent in the amount of $125,000, less the $20,000 deposit, for a total of $105,000. The court also found that Dr. Abraham acted reasonably to mitigate the damages and that all defendants, including the individual signatories on the lease, were jointly and severally liable for the damages award.

Appellants filed this appeal and present ten arguments for our consideration. For convenience, we have grouped their arguments into four categories: (1) standing to sue and authority to execute the lease; (2) constructive eviction; (3) mitigation of damages; and (4) liability of individual signatories.

## II. *Standards of Review*

In an appeal from a bench trial, we will not reverse the circuit court's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *Academy, Inc. v. Paradigm Bldg., LLC*, 2017 Ark. App. 79, ___ S.W.3d ___. On questions of

law, such as the issue of standing discussed below, our review is de novo. *Bibbs v. Cmty. Bank*, 101 Ark. App. 462, 278 S.W.3d 564 (2008).

### III. *Standing to Sue and Authority to Execute the Lease*

Appellants argue first that the Abrahams lacked standing to sue because they filed their complaint in their individual capacities rather than as trustees. We disagree. The suit was for breach of a lease involving property owned by the Trust estate. The Abrahams are the settlors and sole trustees of the Trust, and the Trust grants them the express authority to lease Trust property and "litigate any claim." Moreover, our rules of civil procedure provide that the trustees of an express trust may sue in their own names without joining the party for whose benefit the action is being brought. Ark. R. Civ. P. 17(a) (2016). Rule 17(a) further contemplates that the name of the "real party in interest" may be substituted and that such substitution shall have the same effect as if the action had been commenced in that party's name. *See id.*

In the present case, the trial court substituted "The Abraham Family Trust, Simon Abraham and Annie Abraham, Trustees" as the plaintiff before entering final judgment. This was done without objection by appellants. Given these circumstances, we see no reason for reversal on this point.

Appellants also argue that they are excused from performing the lease because Dr. and Mrs. Abraham signed the lease without identifying themselves as trustees. We find this argument unpersuasive. The Abrahams, as trustees of the property in question, had the power under the Arkansas Trust Code to enter into the lease. Ark. Code Ann. § 28-73-816(9) (Repl. 2012). Similarly, the trust document in this case granted the Abrahams broad powers with

4

respect to the Trust property—they could lease or otherwise manage the property in the manner they deemed appropriate and "exercise any additional powers in the management of the trust property which an individual owner of such property could exercise." Finally, our law assumes that persons in the Abrahams' position have acted in accordance with their status as trustees, even if that status is not disclosed. *See generally Oliver v. Culpepper*, 209 Ark. 326, 190 S.W.2d 457 (1945); *Lanigan v. Sweany*, 53 Ark. 185, 13 S.W. 740 (1890).

The trial court, based on the above authorities and the evidence before it, saw no reason to disturb the assumption that the Abrahams, as trustees, executed a valid lease of the Trust property. Upon our review of the same evidence and authorities, we cannot say that the court clearly erred.[2]

## IV. *Constructive Eviction*

Appellants contend that Dr. Abraham constructively evicted them from the leased premises. Conduct by a landlord that effectively deprives the tenant of the use and benefit of the premises amounts to a constructive eviction. *Fairpark, LLC v. Healthcare Essentials, Inc.*, 2011 Ark. App. 146, 381 S.W.3d 852. The landlord's conduct must be such that it will prevent the tenant's use of the premises for the particular purposes for which it was leased. *Id.* The particular acts or omissions by a landlord that amount to a constructive eviction cannot be defined by a general rule and depend on the facts of each case. *See id.*

---

[2]Appellants make additional arguments regarding the merger of legal and equitable interests in trust property and other matters that were either not raised below or are not germane to our analysis. We therefore decline to address the merits of those arguments.

At trial, appellants presented evidence that the Abrahams interfered with their use of the leased premises by restricting their use of the leased space; failing to timely provide them with a key to the building; not allowing them to put up a sign outside the building; inhibiting their use and decoration of their office space; and otherwise preventing their full, quiet enjoyment of the leasehold. However, as the trial court noted, the evidence on this point was in conflict. Dr. Abraham said that he had received no serious complaints from appellants during their shared occupancy. In support of his testimony, he cited a letter written to him by Dr. Wozniak in which Dr. Wozniak stated that appellants were vacating the premises due to "unforeseen circumstances" and thanked Dr. Abraham for his "cooperation and hospitality." Additionally, witness Sam Sparks, who was an employee of both Dr. Abraham and PMA, testified that he attended a meeting in July 2010 where appellants discussed moving PMA to another location. According to Sparks, the reason given by appellants was that profits were down; no other reason was mentioned.

When faced with these differing views, the trial court exercised its prerogative as fact-finder to resolve the conflicts in the evidence and did so in favor of the Abrahams. *See Kuelbs v. Hill*, 2010 Ark. App. 427, 379 S.W.3d 47. We defer to the circuit court's superior ability to determine the credibility of the witnesses and the weight to be accorded their testimony. *See Academy, Inc.*, *supra*.

V. *Mitigation of Damages*

Appellants argue that Dr. Abraham did not mitigate his damages by re-renting the leased space after appellants had vacated the premises. A party cannot recover damages resulting from consequences that he could have reasonably avoided by reasonable care, effort,

6

or expenditure. *Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005). Reasonable diligence and ordinary care are all that is required. *Id*. Whether one acted reasonably in minimizing, mitigating, or avoiding damages is usually a question of fact. *Id*.

Dr. Abraham testified that he ran an ad in the paper seeking to rent the space vacated by appellants. He also said that he talked to several doctors, and to other people who knew doctors, to see if anyone currently in the area, or who might be moving to the area, needed office space. The court found these mitigation efforts to be reasonable, and appellants offer no convincing argument to the contrary. We therefore hold that the circuit court did not clearly err in its finding of fact on this issue.

## VI. *Liability of Individuals*

As mentioned earlier, both Dr. Wozniak and Ms. Owen signed the lease as individuals. They argue on appeal that they cannot be held personally liable on the lease because the lease reflects no mutuality of contract.

Mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus neither party is bound unless both are bound. *Estate of Bogar v. Welspun Pipes, Inc.*, 2014 Ark. App. 536, 444 S.W.3d 405. Dr. Wozniak and Ms. Owen insist that mutuality is wanting in this case because Dr. and Mrs. Abraham have no obligation on the lease, having executed it in their individual capacities. In light of our holding that the Abrahams had the authority to execute the lease on behalf of the Trust and presumably did so as trustees, they do have an obligation on the lease. Mutuality of contract therefore exists.

Ms. Owen also argues that the lease is unenforceable as to her because she gave no consideration for the lease. Her pleadings and testimony indicate otherwise. She filed a counterclaim stating that the "Plaintiffs and Defendants" entered into the lease, and that she, along with her co-defendants, was seeking a refund of the security deposit and the rent paid. She further alleged in a "grievance sheet" attached to her counterclaim that she was "paying her portion of the lease" and that her husband had put up the $20,000 deposit. She also testified at trial that she was "part of" the lease.

Additionally, the lease provides in pertinent part:

Lessee covenants and agrees:

a. The undersigned agree to be personally and individually bound for all obligations contained in this lease.

Ms. Owen is one of the "undersigned," and she affixed her name to a lease that contemplated that she would be "personally and individually" liable thereon. Parties are presumed to have read and understood their contracts. *McCaleb v. Nat'l Bank of Commerce*, 25 Ark. App. 53, 752 S.W.2d 54 (1988).

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Ethredge & Copeland, P.A.*, by: *David L. Ethredge*, for appellants.

*Jeremy B. Lowrey*; and *Cooper & Bayless, P.A.*, by: *Mark Cooper*, for appellees.