Cite as 2021 Ark. App. 412

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-20-609

| | |
|---|---|
| LANCE LEAVELL AND CHRISTY LEAVELL | **Opinion Delivered** October 27, 2021 |
| APPELLANTS | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-19-389] |
| V. | |
| JERRY GENTRY AND JIMMY BOWDEN | HONORABLE KEN D. COKER, JR., JUDGE |
| APPELLEES | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellants Christy and Lance Leavell appeal an order of the Pope County Circuit Court granting summary judgment in favor of appellees Jerry Gentry and Jimmy Bowden and voiding two deeds procured by Lance. On appeal, Lance argues that the circuit court erred in finding that the transfer of real property was invalid. We find no error and affirm.

## I. *Factual Background*

The parties in this appeal are related, and the property at issue was once owned by the parties' common ancestors, Sibyl and Lawrence Bowden. Lawrence and Sibyl were the parents of two daughters, Jerry Bowden and Beverly Leavell, and one son, Jimmy. Lance is Beverly's son. During their lifetimes and marriage, Lawrence and Sibyl acquired and owned real estate, including a house in Russellville and the family farm.

In 2001, Lawrence and Sibyl executed the Lawrence and Sibyl Bowden Living Trust, which they declared to be a revocable living trust.[1] They funded the trust estate with their real estate interests. Pertinent to this appeal, Lawrence and Sibyl deeded both the house in Russellville and the family farm to the trust by warranty deed on December 17, 2001.

In creating the trust, Lawrence and Sibyl appointed themselves as acting co-trustees of the trust and nominated all three of their children as successor co-trustees in the event of Lawrence and Sibyl's deaths.[2] Lawrence and Sibyl afforded themselves and successor co-trustees certain powers as set out in section VI of the trust as follows:

> The **Co-Trustees**, and the **Successor Co-Trustees**, in order to administer and manage this Trust and the property of the Trust Estate, shall have all the rights, duties, powers, and privileges, as set forth in this Trust instrument, and in addition thereto, all the applicable powers enumerated in the laws of the State of Arkansas given to trustees, Living Trusts, executors of estates, and administrators in the administration of decedent's estates. In addition thereto, the Co-Trustees, or the Successor Co-Trustees, may sell, rent, lease, or encumber all or any part of the property, real or personal, in the Trust Estate, which in the sole discretion of the Co-Trustees, or Successor Trustee, is needed in a wise and financially prudent manner to provide for the needs of **LAWRENCE J. BOWDEN and SIBYL L. BOWDEN,** and to fulfill the intents and provisions of this Trust for the care and benefit of **LAWRENCE J. BOWDEN and SIBYL L. BOWDEN** or any subsequent beneficiaries of this Trust after their deaths, taking into consideration the income and financial benefits that the foregoing persons are currently receiving or are entitled to receive from any source.

(Emphasis in original.)

---

[1]Section XII of the trust declared itself to be "a revocable living trust" that "may be modified, changed, or rescinded at any time by its makers and creators, Lawrence J. Bowden and Sibyl L. Bowden." It did not, however, specify a manner of revocation.

[2]A 2013 amendment modified the terms of the trust to remove Beverly as a successor co-trustee, leaving appellants Jerry and Jimmy as the successor co-trustees.

2

Concerning the use of the trust estate, Lawrence and Sibyl directed that the trust estate was to be used first for their benefit during their lifetimes and second for the distribution to future beneficiaries on their deaths. During Lawrence's and Sibyl's lives, all income derived from the property in the trust estate was to be used for their welfare and financial expenses. The trust directed that the co-trustees—and later, the successor co-trustees—"shall keep in mind at all times their desires when this trust was created, not only to provide for their needs but to as much as possible protect the funds and property in the trust estate for the distribution and benefit of the future beneficiaries of the trust after their deaths." Finally, the trust ordered that the co-trustees and later the successor co-trustees, "while seeing that the immediate financial needs and care needs of **LAWRENCE J. BOWDEN and SIBYL L. BOWDEN** are adequately met, shall take all reasonable and prudent measures possible to protect the trust estate in order to fulfill their future distribution wishes and desires in this trust as are hereinafter set forth."[3]

Section VIII of the trust is of particular importance to the issues raised in this appeal. It states:

> No part of the trust estate, including the principal, interest, income, or property involved therein, shall be at any time pledged, assigned, transferred, sold, or in any manner whatsoever anticipated, charged, or encumbered **by the maker and creator of this trust in her personal name, or by any beneficiary of this trust**; or be in any manner liable in the possession of the co-trustees, or the successor

---

[3]Section XI of the trust established the distribution of the trust estate on Lawrence's and Sibyl's deaths. Originally, the property of the trust, excepting certain listed items of personal property, was to be distributed equally among Jerry, Jimmy, and Beverly. A 2013 amendment, mentioned above in footnote 2, changed the distribution of trust assets on Lawrence's and Sibyl's deaths so that Jerry and her heirs would receive a one-third interest; Jimmy and his heirs would receive a one-third interest; and Beverly's children—Lance and his two siblings—would each receive a one-ninth interest.

co-trustees, for the debts, contracts, obligations, voluntary or involuntary of the makers and creators of this trust or of **any beneficiary of this trust.**

(Emphasis in original.)

In 2005, Lawrence and Sybil modified section VI, the "powers of trustees" paragraph. In this amendment, they permitted the co-trustees to "sell, rent, lease, or encumber all or any part of the property, real or personal, in the Trust Estate, which in the sole discretion of the Co-Trustees, or Successor Trustee, *is desired by Lawrence J. Bowden and Sibyl L. Bowden*, needed in a wise and financially prudent manner to provide for the needs of Lawrence J. Bowden and Sibyl L. Bowden, *or* to fulfill the intents and provisions of this Trust for the care and benefit of Lawrence J. Bowden and Sibyl L. Bowden." (Emphasis added to reflect amendments.)

In 2014, Sibyl, as the "surviving spouse of Lawrence J. Bowden, a single person," deeded the Russellville house to Lance and his wife, reserving a life estate in herself. In 2017, Sibyl deeded the farm parcel to Lance. Sibyl executed both deeds in her individual name and not in her capacity as trustee.

## II. *Procedural Background*

In July 2019, Jerry and Jimmy filed a complaint against Lance, alleging that the 2014 and 2017 transfers of the two parcels to Lance were invalid.[4] Specifically, they contended that at the time of the purported transfers, fee-simple title to both parcels of real estate was held by the trust and not by Sibyl in her individual capacity; as such, Sibyl had no interest

---

[4]Sibyl passed away sometime between the 2017 transfer and the filing of the instant lawsuit.

4

in the property to convey. Jerry and Jimmy further cited section VIII of the trust, which prohibited the trustee from transferring property belonging to the trust in her individual name. Accordingly, Jerry and Jimmy sought a judgment quieting title in the real property in the name of the Lawrence and Sibyl Bowden Living Trust.

Lance answered and denied that the deeds should be set aside, arguing that Sibyl retained the authority during her life to transfer the real property administered by the trust. Lance also asserted that Sibyl had made transfers of other property to Jerry and Jimmy, which they had accepted, so they were estopped from challenging transfers such as the ones at issue in the instant case.

Jerry and Jimmy subsequently filed a motion for summary judgment, contending that the unambiguous language in the trust precluded the transfer of the two tracts in Sibyl's individual name. Lance responded with his own motion for summary judgment, agreeing that there were no disputed questions of fact but arguing that Jerry and Jimmy were not entitled to judgment as a matter of law. According to Lance, the trust documents did not prohibit the transfer of trust property but actually authorized the transfer. Section VIII, he contended, was nothing more than a spendthrift clause that prohibited creditors from asserting an interest in trust property. Lance also cited section VI, which permitted Sibyl, as trustee, to sell trust property, and section VII, which allowed Sibyl to modify the trust at any time.

After a hearing, the circuit court entered an order granting Jerry and Jimmy's motion for summary judgment. Lance filed a motion pursuant to Arkansas Rule of Civil Procedure 52(b) seeking additional findings of facts and conclusions of law. The circuit court obliged

Lance's request with a detailed order setting forth the undisputed facts of the case. The court concluded that the terms of the trust were unambiguous and that the purpose of the trust was to provide for the welfare and financial expense of Sibyl Bowden during her lifetime and to protect the funds and property of the trust for distribution to Sibyl's beneficiaries after her death, as much as possible. The court also concluded that section VIII of the trust explicitly prohibited Sibyl, as creator of the trust, from transfers of trust property in her personal name. Concerning the deeds issued to Lance, the court concluded that Sibyl had signed the deeds in her personal name in derogation of the explicit requirements of section VIII and that Lance procured the deeds from Sibyl without consideration. Accordingly, the court declared the two deeds to be of no effect, and fee-simple title to the real property was vested in the Lawrence and Sibyl Bowden Living Trust for subsequent disposition by the trustees in accordance with the terms thereof. Lance timely appealed.

### III.  *Standard of Review and Construction of Trusts*

A court may grant summary judgment only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. In an appeal of a summary-judgment motion, we ordinarily examine the record to determine if genuine issues of material fact exist. *May v. Akers-Lang*, 2012 Ark. 7, 386 S.W.3d 378. Here, the parties filed cross-motions for summary judgment, essentially agreeing that no material facts remained. When the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. In determining the issues of law presented, our standard of review is de novo. *State v. Cassell*,

6

2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666; *Baker v. Dir.*, 2017 Ark. App. 593, 534 S.W.3d 742.

A court construing a trust applies the same rules applicable to the construction of a will, and the paramount principle in the interpretation of wills is that the intention of the testator, or trust settlor, governs. *Fisher v. Boling*, 2019 Ark. App. 225, at 2, 575 S.W.3d 592, 594. The settlor's intention is to be determined from viewing the four corners of the instrument considering the language used and giving meaning to all its provisions whenever possible. *Id.* When the purpose of a trust is ascertained, that purpose will take precedence over all other canons of construction. *Wisener v. Burns*, 345 Ark. 84, 44 S.W.3d 289 (2001); *Carmody v. Betts*, 104 Ark. App. 84, 289 S.W.3d 174 (2008).

IV. *Discussion*

On appeal, Lance agrees that there were no factual issues in dispute in this case; however, he contends that the circuit court erred in its construction and interpretation of the trust. He raises three general arguments: (1) the trust gave Sibyl the power to remove property from the trust; (2) the circuit court erroneously interpreted section VIII; and (3) a trustee's failure to sign a deed as trustee does not invalidate the deed. We find no merit in any of Lance's arguments.

First, Lance takes the position that the trust granted Sibyl the authority to remove property from the trust. In support of this contention, he cites to two sections of the trust. He argues that section XII ("Power to Modify the Trust") makes it "clear that [Sibyl] . . . had the clear intent that she would be able to change any portion of the trust, revoke the trust, and retain complete control over the trust property." He also argues that section VI,

7

as amended in 2005, gave Sibyl the discretionary authority, as a co-trustee, to "sell, rent, lease, or encumber all or any part of the property, real or personal, in the trust estate" so long as the transaction was her desire and was needed in a wise and financially prudent manner to provide for her needs or to fulfill the intents and provisions of the trust for her care and benefit.

We do not disagree that Sibyl could remove property from the trust. Here, Sibyl created a revocable trust. In so doing, she clearly retained the right to revoke and to modify the trust. When the settlor of a trust retains a power to revoke, the settlor may revoke the trust in part, thus allowing withdrawal of some of, rather than all, the property from the trust, if that is all the settlor wishes to do. Restatement (Third) of Trusts § 63. Sibyl, however, created a trust that did not provide a method by which the settlor could revoke or modify. Arkansas Code Annotated section 28-73-602(c)(2)(B) (Repl. 2012) provides that when the terms of the trust do not provide a method to revoke or amend a revocable trust, the settlor may revoke or amend the trust by any method manifesting clear and convincing evidence of the settlor's intent. The question, then, is what constitutes clear and convincing evidence of a settlor's intent to modify a trust.

Our court addressed this question in *Garrett v. Neece*, 2019 Ark. App. 178, 574 S.W.3d 686. In *Garrett*, the settlor had reserved the right to revoke her trust at any time, executed a quitclaim deed to a tract of property to her son, then amended the trust document to except that tract from the trust property; she further evidenced her intent when she created a subsequent trust that made no reference to that tract. We found such actions to constitute clear and convincing evidence of the settlor's intent to modify her trust.

8

Did Sibyl clearly and convincingly manifest evidence of her intent to modify the trust when she deeded the properties to Lance? The circuit court answered this question in the negative, finding that there was no clear and convincing evidence that she intended to modify the trust:

> The record reflects multiple occasions[5] when the Decedent exercised that specific understanding of how to both amend the trust and make transfers of trust property in the manner and form required by the trust, and a consistent track record of doing so on every occasion up and until the procurement of the deeds in question by the Defendants which are in specific derogation of the unambiguous restrictions of section VIII.
>
> . . . .
>
> The court specifically finds that the deeds procured by the defendants in this case do not constitute "clear and convincing evidence" of Ms. Bowden's intent to revoke or amend her trust by virtue of their execution. To the contrary, the Court finds that the record in this case, if anything, evidences the exact opposite, i.e. that the Decedent knew very well how to effect amendments to her trust documents and to make transfers of trust property pursuant to the requirements and stated intent of her trust related thereto, and did so routinely in every instance up until the procurement of the deeds in question.

In his brief, Lance does not directly address the circuit court's finding that the record was devoid of clear and convincing evidence that Sibyl intended to modify or revoke the trust by deeding the properties to Lance. Instead, he asserts that Sibyl intended to give herself authority to remove property from the trust "and do with it as she saw fit." We disagree. While section VI of the trust did grant authority to sell or dispose of trust property as Sibyl

---

[5]Lance submitted an affidavit in support of his response to Jerry and Jimmy's summary–judgment motion to which he attached copies of other deeds executed by Sibyl after the creation of the trust in 2001. These deeds, however, reflected that Sibyl and her husband had executed those deeds *as co-trustees of the trust*, granting the property to themselves as individuals and then, in their individual names, deeded the property to others.

desired or needed, that authority was granted to Sibyl in her capacity as *co-trustee*, and not to Sibyl individually. We conclude that the circuit court properly interpreted and applied section 28-73-602(c)(2)(B)'s requirement that a settlor may revoke or amend a revocable trust—when that trust does not provide a method for doing so—in some manner that manifests clear and convincing evidence of the settlor's intent. Accordingly, we affirm on this point.

Lance's second argument is that the circuit court misinterpreted section VIII. For ease of reference, we set out section VIII again:

> No part of the Trust estate, including the principal, interest, income, or property involved therein, shall be at any time pledged, assigned, transferred, sold, or in any manner whatsoever anticipated, charged, or encumbered **by the maker and creator of this Trust in her personal name, or by any beneficiary of this trust**; or be in any manner liable in the possession of the co-trustees, or the successor co-trustees, for the debts, contracts, obligations, voluntary or involuntary of the makers and creators of this Trust or of **any beneficiary of this Trust.**

On appeal, Lance argues that section VIII was nothing more than a simple spendthrift provision and that the court failed to give effect to its purpose. Lance contends that the court should have given equal import to the part of the paragraph after the semicolon, which he claims is intended to do nothing more than protect the trust's assets from claims by creditors. According to Lance, this paragraph was not intended to place a restraint on how Sibyl could dispose of trust property.

We decline to address the merits of Lance's argument because, although he raised the spendthrift issue in his motion for summary judgment, he failed to obtain a specific ruling on it from the circuit court. Here, the circuit court made specific findings concerning section VIII. It found that section VIII was included in the trust in its initial version and was

10

carried over verbatim in each subsequent amendment. The circuit court found that the terms of the trust were unambiguous, specifically as they relate to "alleged attempted preemptive transfers of trust property to, or attempts to procure trust assets by, certain individual trust beneficiaries which are otherwise in derogation of the specific stated intent of the trust and specific beneficiary allocations called for by the trust." The court, however, never made a ruling on the specific argument that section VIII is a spendthrift provision. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal. *Valentine v. White Cnty. Med. Ctr.*, 2020 Ark. App. 565, 615 S.W.3d 729 (citing *Miller v. Ark. Dep't of Fin. & Admin.*, 2012 Ark. 165, 401 S.W.3d 466). Because the circuit court did not specifically rule on this issue, we are precluded from addressing the merits of Lance's argument.

In his third and final point, Lance argues that "a trustee's failure to sign a deed as trustee does not invalidate the deed." In support of this contention, he cites two cases that he claims address the validity of a document that conveys an interest in trust property if the trustee did not sign the document in his or her representative capacity: *Oliver v. Culpepper*, 209 Ark. 326, 190 S.W.2d 457 (1945), and *Preferred Medical Associates, LLC v. Abraham Family Trust*, 2017 Ark. App. 260, 520 S.W.3d 710.

In *Oliver*, our supreme court considered an appeal of a quiet-title action. Factually, a mother's will devised all of her real property to her invalid daughter and appointed her son as guardian and trustee of the daughter's person and estate. The will granted full control and management of the property to the son, giving him the ability to sell the property as he deemed to be in the daughter's best interest. The son engaged in numerous transactions involving the real estate; one of those conveyances, however, was not made in his

11

representative capacity as trustee, which resulted in a suit to quiet title. On appeal, our supreme court considered "the effect of a conveyance by a trustee which makes no reference to the power to sell conferred by the instrument which created the trust." 209 Ark. at 334, 190 S.W.2d at 461. The court held that a "grantor is understood in equity to engage with his grantee to make his conveyance *as effectual as he has power to make it*; and it should be assumed that he acted by virtue of whatsoever right enabled him to discharge his full undertaking, and his act will be so referred." *Id.*, 190 S.W.2d at 462 (emphasis added).

In *Preferred Medical Associates*, our court heard an appeal in a breach–of–contract case. Factually, the plaintiffs/appellees served as trustees, but they sued the defendants in their individual capacities. As part of their defense, the defendants/appellants argued that it was excused from performing under the contract because the plaintiffs had signed the contract without identifying themselves as trustees. Citing *Oliver*, we held that "our law assumes that persons in the [plaintiff's] position have acted in accordance with their status as trustees, even if that status is not disclosed." *Id.* at 4, 520 S.W.3d at 714.

We find neither case to be dispositive of the issue presented by this appeal. Here, the issue on appeal is the validity of a transfer of trust property undertaken in contravention of the express terms of the trust. Sibyl created a trust containing language that expressly restricted and limited her power to transfer trust property in her personal name. Under that plain language, we agree with the circuit court's ruling that the deeds were in explicit derogation of section VIII. Under our standard of review, we affirm the court's grant of Jerry and Jimmy's motion for summary judgment.

Affirmed.

HIXSON and BROWN, JJ., agree.

*James, House, Downing & Lueken, P.A.*, by: *Richard C. Downing* and *Zachary D. Wilson, Jr.*, for appellants.

*Streett Law Firm, P.A.*, by: *James A. Street*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.