Cite as 2022 Ark. App. 260

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-21-410

|  |  |  |
|---|---|---|
| SHARON BAKER | | Opinion Delivered May 25, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CV-20-64] |
| V. | | |
| KEVIN BAKER, NINA CRANFORD, DOUG BAKER, AND DAVID BAKER | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | APPELLEES | |
| | | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

This case involves the interpretation of a provision in a trust directing how that trust may be amended. Sharon Baker appeals from a decision of the Hot Spring County Circuit Court finding that the trust was not properly amended and granting a motion for summary judgment filed by the appellees, Kevin Baker, Nina Cranford, Doug Baker, and David Baker.

### I. *Factual and Procedural Background*

Sharon was married to the late Charles F. Baker. Charles was the father of the appellees, and Sharon is their stepmother. On July 30, 2018, Charles created the Charles F. Baker Living Trust ("the July 2018 trust"), a revocable trust in which he named himself settlor and trustee; he also named Sharon and the appellees as beneficiaries on his death. Article III of the trust articulated the process by which the trust could be revoked or amended. It provides as follows:

As Settlor, I may, acting by a written instrument, signed, acknowledged, and delivered to the Trustee during my lifetime, revoke this Trust in whole or in part and amend it from time to time in any respect. *Any amendment made by Settlor shall be executed by preparation of a signed, dated, written document titled "The Charles F. Baker Living Trust Amendment."* The amendment document must be kept with the original trust documents. In case of revocation, the Trust property shall be conveyed to the Settlor who originally transferred the property into the Trust, including assets and income which may be traced to the original property. Upon my death, this Trust shall thenceforth be irrevocable and shall not be revoked, modified, or amended in any respect.

(Emphasis added.) On the same day that he executed the trust, Charles funded it; he and Sharon executed a quitclaim deed conveying three parcels of real estate to the trust.

On April 10, 2019, Charles executed a document titled "First Amendment of the Charles F. Baker Living Trust" ("the April 2019 trust" or "the April 2019 amendment"). The April 2019 trust began: "Pursuant to the provisions of Article III of The Richard Harper Living Trust established by CHARLES F. BAKER, Settlor, with CHARLES F. BAKER, as Trustee, the Trust is hereby amended in the following respects."[1] Primarily, the April 2019 trust amended portions of Article V, deleting any reference to Sharon as a beneficiary, and it also removed her as a potential successor trustee.

Just over one month later, on May 20, 2019, Charles executed another document titled "The Charles F. Baker Living Trust" ("the May 2019 trust"). The May 2019 trust reinstated Sharon as a beneficiary of real and personal property and appointed her as

---

[1]The reference to "The Richard Harper Living Trust" is apparently a scrivener's error. None of the parties assign any weight or import to the one-time use of an incorrect name, and the circuit court referred to it as a "typographical error" at the summary-judgment hearing.

successor trustee. In nearly all respects, the May 2019 trust was identical to the July 2018 trust, except it left all of the named real property to Sharon instead of dividing it between Sharon and the appellees. On May 24, Charles and Sharon executed a quitclaim deed to the Charles F. Baker Living Trust conveying the same property as they had deeded to the July 2018 trust.

Charles died on January 31, 2020. On February 21, Sharon filed a "Complaint for Confirmation of Trust and Title Trust Property." In it, she asked the court to enter an order quashing the July 2018 and April 2019 trusts, confirming the May 2019 trust and quitclaim deed, and quieting title to the property in her name. The appellees responded and filed a counterpetition in which they argued that the May 2019 trust was "void to the extent it is treated as an amendment as it fails to substantially comply with the amendment requirements" of the July 2018 trust. The appellees further alleged that the May 2019 trust was void in that it was not properly funded because Charles had attempted to fund the May 2019 trust with real and personal property that had already been placed in a different trust. As such, the appellees asked the court to declare that the May 2019 trust was void and that the terms of the July 2018 trust were controlling.[2]

---

[2]The appellees also asserted that Sharon was in possession of certain property that belonged to the July 2018 trust and asked that she be restrained from disposing of any of it until the court ruled on the matter. This claim was not addressed in the circuit court's initial order granting summary judgment; however, at Sharon's request, the circuit court entered an order containing an appropriate and sufficient Rule 54(b) certificate such that we have a final order for purposes of our appellate jurisdiction.

The appellees subsequently filed a motion for summary judgment, arguing again that the May 2019 trust failed as an amendment to, or revocation of, the July 2018 trust because it failed to substantially comply with the manner of amendment established in the original trust. Sharon responded that since the July 2018 trust was revocable, Charles clearly evidenced an intent to revoke it by executing the May 2019 trust and quitclaim deed.

The circuit court held a hearing on the appellee's summary-judgment motion and heard arguments of counsel. At the conclusion of the hearing, the court stated that there was no genuine issue of material fact that had been presented that would warrant setting aside the July 2018 trust or the April 2019 amendment. The court entered a written order finding as follows:

> In this case, the [July] 2018 Trust, within Article III, specifically sets forth its requirements for revocation or amendment: (1) It states in part, "the Settlor may by written instrument signed, acknowledged, and delivered to the Trustee during the Settlor's lifetime revoke the Trust in whole or in part and amend it from time to time." (2) Any amendment should be titled "The Charles F. Baker Living Trust Amendment." (3) With regard to revocation, the "trust property shall be conveyed to the Settlor who originally transferred the property into the Trust, including assets and income which may be traced to the original property." 2018 Trust Article III
>
> The terms of the trust are clear and specific as it relates to the authority of the Settlor to amend and/or revoke the 2018 Trust. Therefore, A.C.A. § 28-73-602 requires that for an amendment or revocation, substantial compliance with the method in the trust is necessary.
>
> . . . .
>
> Other than the First Amendment to the Charles F. Baker Living Trust, executed on April 10, 2019, there are no other documents, which have been executed and submitted as evidence herein, that comply with the provisions regarding amendments to the Trust.

4

Accordingly, the court concluded that (1) the July 2018 trust and April 2019 amendment were valid; (2) the May 2019 trust failed as an amendment to the July 2018 trust "because the Settlor and initial Trustee, Charles F. Baker, failed to substantially comply with the terms of the 2018 Trust with regard to revocation and amendment"; and (3) the May 2019 trust failed because it was not properly funded with the decedent's property. Sharon timely appealed the circuit court's order.[3]

## II. *Standard of Review and Applicable Law*

In this case, the circuit court granted summary judgment in favor of the appellees. Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Wilcox v. Wooley*, 2015 Ark. App. 56, at 4, 454 S.W.3d 792, 795. When the parties agree on the facts, we simply determine whether appellees were entitled to judgment as a matter of law; our review is de novo for questions of law. *White v. Harper*, 2021 Ark. App. 435, at 5, 638 S.W.3d 304, 307.

Specifically, the circuit court granted summary judgment, concluding that there was no issue of fact regarding the validity of the July 2018 trust and the April 2018 amendment. On appeal, Sharon argues that the circuit court erred in granting summary judgment in favor of the appellees because reasonable minds could differ on the inferences to be drawn from

---

[3]On appeal, Sharon does not challenge the third finding of the circuit court--i.e., that the May 2019 trust failed because it was not properly funded. As such, we do not delve into the matter or consider it further.

5

the facts presented in this case. *See, e.g.*, *Jackson v. Harps Food Stores, Inc.*, 2020 Ark. App. 475, at 13, 610 S.W.3d 173, 181 ("After reviewing the evidence, the circuit court should deny summary judgment if, under the evidence, reasonable minds could reach different conclusions from the same undisputed facts."). More specifically, Sharon argues that reasonable minds can differ on whether the May 2019 trust substantially complied with the amendment method set forth in the July 2018 trust.

In construing a trust, we apply the same rules applicable to the construction of wills. *Garrett v. Neece*, 2019 Ark. App. 178, 574 S.W.3d 686. The cardinal rule in construing a trust, however, is that the intention of the settlor must be ascertained. *Dawson v. Stoner-Sellers*, 2019 Ark. 410, 591 S.W.3d 299. We determine this intention by viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Garrett, supra*. When the terms of a trust are unambiguous, it is the court's duty to construe the written instrument according to the plain meaning of the language employed. *Dawson, supra*.

### III. *Discussion*

Does the May 2019 trust amend the July 2018 trust? That is the issue for our consideration in this appeal. This court has expressly held that a trust agreement that sets out by its own terms the method by which it may be revoked can be revoked only in the manner provided. *Ashley v. Ashley*, 2012 Ark. App. 236, at 9, 405 S.W.3d 419, 425 (citing *Gall v. Union Nat'l Bank*, 203 Ark. 1000, 159 S.W.2d 757 (1942)). Arkansas Code Annotated section 28-73-602(c)(1) (Repl. 2012) provides, however, that the settlor of a trust "may revoke

or amend a revocable trust . . . *by substantial compliance* with a method provided in the terms of the trust." (Emphasis added.)

Here, Sharon admits that the July 2018 trust set forth four conditions for an effective amendment; it had to be signed, dated, written, and titled "The Charles F. Baker Living Trust Amendment." She contends that the May 2019 trust complied with three of the four conditions; it was signed, dated, and written. She argues that the only thing the May 2019 trust lacks is the word "Amendment." Thus, Sharon maintains that "compliance can be substantial even if it is not total," that the May 2019 trust complied with the majority of Article III's requirements, and that it "substantially complied" with the requirements for amending the trust.[4] We are not persuaded.

We acknowledge that the May 2019 trust was signed, dated, written, and titled "The Charles F. Baker Living Trust." While Sharon argues that the missing required caption of "Amendment" is not significant, we disagree. As the appellees point out, this is more than a failure to include one word--"Amendment"--in a caption. The real problem is that nowhere in the May 2019 trust does it reflect a reference to any prior document. One reading

---

[4]Sharon also argues in a subsequent point on appeal that it is questionable whether the July 2018 trust makes the amendment method "exclusive." *See* Ark. Code Ann. § 28-73-602(c)(2) (providing that if the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, a settlor may amend a revocable trust by "any other method manifesting clear and convincing evidence of the settlor's intent."). It is not entirely clear that Sharon ever made this argument below; however, even if she did, the circuit court did not rule on it. *See Leavell v. Gentry*, 2021 Ark. App. 412, at 11–12, 636 S.W.3d 794, 800 (declining to reach an argument regarding interpretation of a trust when the appellant raised the issue before the circuit court, but the circuit court did not expressly rule on it). We therefore do not address it herein.

the May 2019 trust by itself would never know that a prior document existed, much less that

the prior document was being amended. In addition, Charles amended the July 2018 trust

once before in compliance with Article III's provisions when he executed the April 2019

amendment, wherein he expressly captioned it the "*First Amendment* of the Charles F. Baker

Living Trust." (Emphasis added.) Thus, Charles knew how he was supposed to accomplish

an amendment. As the circuit court stated, "Other than the First Amendment to the Charles

F. Baker Living Trust, executed on April 10, 2019, there are no other documents, which

have been executed and submitted as evidence herein, that comply with the provisions

regarding amendments to the Trust." In short, the April 2019 document complies with the

amendment requirements of the July 2018 trust, but the May 2019 document does not.

Finally, we acknowledge Sharon's argument regarding substantial compliance as set

forth in section 28-73-602(c)(1). Section 28-73-602(c)(1), however, does not define

substantial compliance. While Sharon cites several cases purporting to describe what

constitutes "substantial compliance," we conclude that these citations are inapposite because

they do not address the specific requirement for amending a trust set forth in *Ashley*, *supra*:

if a trust agreement sets out by its own terms the method by which it may be revoked--or,

in this case, amended--then revocation (or amendment) may only be accomplished in the

manner provided in the trust.

Likewise, we conclude that the *Restatement (Third) of Trusts* is instructive in this matter.

*The Restatement (Third) of Trusts* § 63 cmt. i (Am. L. Inst. 2003), clarifies that "[i]f the terms

of the trust reserve to the settlor a power to revoke or amend the trust exclusively by a

particular procedure, the settlor can exercise the power only by substantial compliance with the method prescribed. Thus, if a settlor reserves the power to revoke the trust 'only by a notice in writing delivered to the trustee,' revocation requires the delivery of such a notice to the trustee."

Here, the trust had specific requirements for amendment: "Any amendment made by Settlor shall be executed by preparation of a signed, dated, written document titled 'The Charles F. Baker Living Trust Amendment.' The amendment document must be kept with the original trust documents." We agree with the circuit court's conclusion. The failure of the May 2019 document to comply with the method for amendment set out in Article III of the July 2018 trust is fatal. Accordingly, we affirm the circuit court's order granting summary judgment to the appellees.

Affirmed.

GRUBER and HIXSON, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Jonathan D. Jones*, for appellees.